The complaint alleges substantially the following facts:
That the plaintiffs, Gideon Perry, Joel Evans, Abram Nichols, Hilliard Williams and Ed. Jones, are the trustees of the Second Baptist Church of the City of Raleigh, duly elected according to the usage of said church. *Page 540 
The plaintiffs, Gideon Perry and Abram Nichols, together with Beverly Stanly, Merritt Williams and Frederick Dunn, were on the 31st day of March, 1866, the predecessors of the plaintiffs as said trustees.
As such trustees, at the time last aforesaid, they entered into a contract in writing, (in which the said Beverly Stanly is by mistake called Beverly Stewart) with the defendant Henry M. Tupper, for the purchase of the lot of land on which the Second Baptist Church of the city of Raleigh, is now located.
On or before the 27th day of December, 1869, the said contract (723) having been complied with upon the part of the said trustees and their successors, the defendant Henry M. Tupper, and his wife Sarah B. Tupper, executed a deed conveying said lot of land to Joel Evans, Robert Hinton, Hardy Cross, Alexander Chapman, and Ed. Jones; the said Evans, Cross and Jones being plaintiffs in this action.
Said deed was made to the persons aforesaid, as "Trustees of the Raleigh Institute and Second Baptist Church of the city of Raleigh," whereas it should have been made to them only as trustees of the Second Baptist Church.
Under said deed, the plaintiffs and their predecessors have continued to hold said property as trustees, except as hereinafter stated, and have never pretended to hold the same as trustees of the Raleigh Institute.
It is pretended by the defendant that on or about the 11th day of March, 1871, Joel Evans, Robert Hinton, Chapman Alexander and Hardy Cross, representing themselves to be the trustees of the Second Baptist Church, executed to him a paper writing, purporting to be a lease of said premises, or a part thereof, for the term of nine hundred and ninety-nine years, the said instrument being without consideration, and having no seal attached thereto.
The plaintiffs have been informed and aver that said paper writing was not executed by the said Joel Evans and Hardy Cross, and that if their names were placed thereto by their consent, it was under a misapprehension as to the nature and terms of said instrument, and from the confidence they had in the defendant.
The plaintiffs are not acquainted with any person of the name of Chapman Alexander, and aver that no person of that name has ever been a trustee of said church. Said persons did not constitute the entire Board of Trustees of said church, at the time aforesaid, and had no authority to lease said property; and if said instrument had been executed by all the trustees of said church, the same would have been void.
(724) After said contract of purchase, the Second Baptist Church erected their church edifice upon said lot, and for a considerable length of time, the defendant was pastor thereof, and continued to exercise *Page 541 
the duties of his office until the 20th day of October, 1872, when, by regular proceedings and action of said church, he was dismissed from his office. Until the defendant was so dismissed, the existence of the said paper writing of the 11th of March, 1871, was entirely unknown and unsuspected by the said church. Some time in the year 1871, a proposition to lease the back room of the church to the defendant, for school purposes, was made, and rejected by a large majority of the members of said church.
About 1873, the defendant and a small faction of the church obtained possession of said church edifice without authority, and held the same without regard to the rights of said church.
On or about the 5th day of January, 1874, the plaintiffs caused to be issued a summons against the defendant as a trespasser, which was heard before W. Whitaker, J. P., who decided that the plaintiffs were entitled to possession, and thereupon they were put into possession of said edifice by the process of the court.
That an appeal was taken thence to the Supreme Court of North Carolina, and under the order and decree of said court they have been required to restore to the defendant the possession of said land and church edifice since the commencement of this action. Said writ of restitution was ordered, not upon the merits of the case, but because the plaintiffs had obtained possession thereof under the judgment of a Justice of the Peace, which was, in the opinion of said court, improperly rendered.
The complaint demanded judgment:
1. That the defendant, H. M. Tupper, be required to restore said land to the plaintiffs.
2. For a reasonable rent of said premises.
3. For costs, etc.
The defendant filed an answer, of which the following are the (725) material parts:
That it is not true that the plaintiffs are the trustees of said church, nor have any of them been such trustees since the year 1872.
It is not true that the conditions of the first mentioned deed had been complied with, nor that the entire purchase money had been paid. One of the five notes mentioned in said deed and part of another had been paid.
A church meeting was held on the 28th day of December, 1867, at which the defendant made a proposition to cancel the notes outstanding for the residue of the purchase money, and to convey the title to a Board of Trustees known as the "Trustees of the Raleigh Institute and Second Baptist Church," so as to obtain funds from the Freedman's Bureau, which could only be used for the purposes of education and *Page 542 
thus aid in the construction of the building. This proposition was accepted; a new Board of Trustees elected; and the deed was made to them the next day according to said agreement.
That the deed made to the Trustees of the Raleigh Institute and Second Baptist Church of the city of Raleigh was drawn in proper form.
It is not true that the plaintiffs and their predecessors have continued to hold said property as Trustees of the Second Baptist Church, and have never pretended to hold the same as Trustees of the Raleigh Institute.
The said land and premises have been held by proper trustees, chosen from time to time, according to the rules and usage of the Baptist denomination, and acting as well for the Raleigh Institute as for said Church, and in recognition of the trusts for each.
Funds amounting to about two thousand dollars were received from the Freedman's Bureau, to be, and which were, expended in the construction of a proper building to be used for a school and the construction of proper rooms therefor. These funds could not have been (726) obtained except on the condition of being used for school purposes. When the last deed was given, a school for the education of colored people was kept up in the same story and a part of the upper story was used for sleeping apartment. Said school was continued in the lower story until the forcible expulsion of the defendants from the premises.
On the 11th day of March, 1871, the said Joel Evans, Robert Hinton, Alexander Chapman, (or Chapman Alexander, his true name as he is therein called,) and Hardy Cross, being the rightful trustees of said church, leased to the defendant and his successors as "Agt. missionaries of the Am. Bap. Home Mission Soc., New York city," meaning the American Baptist Home Mission Society, a body duly incorporated and organized under the laws of the State of New York, as by a vote of said church they were authorized to do — "the room or rooms, including the whole lower story" of the said "Second Baptist Church edifice, Raleigh, for the term of nine hundred and ninety-nine years, to be used for the highest interest of the colored people, in the way of their education and elevation."
The allegations of the complaint, impeaching said lease, are not true. The same was made with a full understanding of its nature and purposes, and to carry out the action of the church and the pledges made, under which the deed from the Freedman's Bureau was obtained, and in consideration thereof, and for the objects therein declared.
It is not true that the parties executing said lease did not constitute the entire Board of Trustees at that time, and had no authority to make such lease. The defendant is advised that said lease is valid and binding in law. *Page 543 
It is not true that the defendant has been dismissed from his said office by any action of the church, or under its rightful authority.
It is not true, as alleged, that the existence of said deed of (727) lease was entirely unknown and unsuspected by said church until the defendant was dismissed from his said office.
It is not true that in the year 1871, a proposition to lease the back room of the church for school purposes was made and rejected by a large majority of the members thereof.
It is not true that, in 1873, the defendant and a small faction of the church obtained possession of said church without authority, and held the same without regard to the rights of said church.
The plaintiffs have no title to said property, as trustees or otherwise.
Copies of the several instruments referred to in the pleadings, were filed as exhibits, but it is not necessary for the purposes of this decision to set them out at length.
By consent, the case was referred to Joseph B. Batchelor, Esq., to hear and determine all of the issues involved. The finding of the referee with regard to matters of fact to be final, as to matters of law to be subject to appeal.
At January Term, 1876, the referee filed his report of which the portions necessary to an understanding of the case as decided, are as follows:
"The referee finds as a fact that in the year 1872, and before 25th of September, considerable disturbance had arise among the members of said church, many of them being much displeased with their pastor, the defendant. On that day, a regular meeting was held at the church edifice in raleigh. The defendant was present and as Moderator called the meeting to order and presided during most of the meeting, calling Augustus Sheppard who was assistant pastor, to the chair when he left it. Sherwood Capps who was then Clerk or Secretary of the Society was also present and acting as Secretary. The meeting was regularly called to order by the Moderator. After much confusion it separated without having taken any legal action and without any motion to adjourn. The Secretary took with him the book in which the minutes of the Society was kept, and being also (728) Sexton, closed and locked the church edifice and took with him the key. Said Capps then was, and for a long time hereafter, continued to be, a student at the Shaw Collegiate Institute, of which the defendant was principal.
After this meeting a large number of the members of the Society including the plaintiffs, Joel Evans, Hardy Cross, Abram Nichols, Ed. Jones and Hilliard Williams, three of these named, being at that time trustees of said Church or Society, ceased to attend the meetings of *Page 544 
the Society which were held regularly at the Church edifice, both for worship and the transaction of business; and since that time, the plaintiffs and those members of the Society acting with them, being a large number thereof and claimed by the plaintiffs to constitute a majority of the same, have not attended the Church either for worship, or the business meetings thereof. Among the number thus ceasing to attend were three of the trustees and all of the deacons. One of the trustees, Robert Hinton, had removed from this State and had ceased to act as a member of the Society, and the fifth trustee, Chapman Alexander, continued to act with the defendant and those acting with him.
The said members thus withdrawing, on the 29th of September, 1872, met at the house of Joel Evans in the city of Raleigh, and from that time up to the commencement of this action, (except during a period in which they had possession of the church edifice,) have continued to hold meetings, both for worship and the transaction of business, on the lot of said Evans, procured by them for that purpose, and have claimed to be and constitute the "Second Baptist Church, Raleigh," which was organized as aforesaid, on the 17th day of February, 1866. On the 20th March, 1874, they appointed two trustees from their body, to-wit: Gideon Perry and Abram Nichols, in place of Robert (729) Hinton and Chapman Alexander, and afterwards called a pastor to officiate for them.
Since the 25th of September, 1872, the other members of the Society continued to worship and to hold meetings for the transaction of business at the church edifice, at the regular times, and after due notice. The defendant has, during all this time, continued to act as their pastor, with the consent and concurrence of the members acting with him. These members have kept a regular organization as a religious society, with the same covenant and articles of faith which were first adopted, and have appointed deacons and filled all vacancies in the offices of trustees, and claim that they were and continued to be the religious society known as the "Second Baptist Church, Raleigh," which was organized on the 17th day of February, 1866.
Just before, or after the meeting of the 17th day of September, 1872, the defendant said, in a conversation with Hilliard Williams, Joel Evans, Abram Nichols and Hardy Cross, that the church was his own, and he intended to govern it as he pleased. If any of them did not want to hear him, they could leave the church. Evans, Cross and Williams asked the advice of Gov. Holden as to the course they should pursue.
The withdrawal of the plaintiffs and other members of the society as aforesaid, immediately after the meeting of the 25th of September, *Page 545 
1872, was voluntary on their part. They were not expelled or driven out of said society by the other members thereof, but voluntarily and of their own accord withdrew therefrom, and in so far as they could, severed their connection therewith. They could have attended the meetings of the society, both for worship and the transaction of business, if they had thought proper so to do. They were not prevented by force from attending and taking part in the business meetings, and their right to do so was not denied. . ..
In addition to the foregoing facts found by the referee, the plaintiffs offered to prove that certain members of said Society (730) whose names were given, and others, amounting in number to one hundred and five persons, including the deacons of the church and the trustees, except one, worshipped at the house of Joel Evans, after the difficulty at the meeting of the 25th of September, 1872. That they continued to meet principally there, and sometimes at other places for the transaction of business, and for worship, from that time to the present, and kept minutes of such meetings. That they filled vacancies in the offices of trustees on the 20th of March, 1874, and that these persons were members of the Second Baptist Church prior to, and on, the 25th day of September, 1872, and have remained so ever since. That said persons constitute about two-thirds of the entire membership of said Church.
The object of this evidence was to show where the organization known as the Second Baptist Church has been since the 25th day of September, 1872, and was, at the commencement of this action.
The defendant objected to the evidence on the ground that it was immaterial and irrelevant, since it only proposes to show that a majority of the members of an organized religious association, or corporation aggregate, convened at another than their usual place of meeting without notice to the minority, and there assumed to act as the said religious association, or corporation aggregate, which evidence has no tendency to prove where the organization known as the Second Baptist Church has been since the 22d of September, 1872, and was at the commencement of this action.
The evidence was rejected, but in deciding upon the questions of fact and law arising in the action, the referee has given to the evidence the same consideration as if the facts had been proved by the plaintiff and found by him. . . .
The referee found as a conclusion of law, that "the defendant and those acting with him, did constitute the Second Baptist Church of Raleigh," organized on the 17th day of February, 1866, and as such organization, were entitled to all the proper rights and (731) privileges thereof." *Page 546 
The plaintiffs excepted, among other things, to the ruling of the referee in rejecting the evidence offered and hereinbefore set out.
Upon the hearing, the court overruled the exception and the plaintiffs appealed.
The record sent upon appeal to this court is very voluminous, and it is deemed unnecessary to state other matters than those specifically ruled upon by the court.
When a case is under the provision of C.C.P., submitted to the Judge to decide facts, as well as law, a novel state of things exists. He as Judge, is to admit or reject evidence, and is to charge himself upon the questions of law applicable to the case, and is then, as jury, to find the facts and render a special verdict. The same is the mode of procedure before a referee.
The referee, in the case before us, commits a grave error in assuming that what amounts to a voluntary withdrawal of members from a religious association, is a question of fact.
What amounts to a duress, is a question of law. What amounts to undue influence, is a question of law. On the like principle, what amounts to a voluntary withdrawal of members, is a question of law. The referee erred in not instructing himself clearly upon this question of law. Had he done so, he would have seen the relevancy of the evidence which he rejected.
The plaintiffs, and those acting with them, aver that they constitute the Second Baptist church of Raleigh. That by the arbitrary and high-handed conduct of the defendant, (being colored people and unwilling to do any act that might lead to open force on the (732) part of a white man, who had acted as their "Shepherd," and acquired much influence over them,) after the meeting, 25th September, 1872, they procured a house, other than the building in which for several years they had been accustomed to hold meetings for worship and for business, and from which they were expelled by the defendant, and continued to worship and transact business under the organization of the Second Baptist church, Raleigh, consisting of all of the deacons, all of the trustees, save one, and more than two-thirds of the entire association. These allegations, if true, showed that, as a legal inference, they had not withdrawn from the association voluntarily, and the evidence excluded by the referee, tended to prove the allegations to be true in point of fact. *Page 547 
We think the referee also erred in the legal inference, that the house in which the meetings of the association was held, made any essentialdifference. The law of the association requires the members to reside in Raleigh, and the meetings to be had at some place in Raleigh, but there is no provision making it essential that the meetings should be held in any house or at any particular place, like a statute which requires the legislature to hold its meetings at the State House, in Raleigh, or the Superior Courts to be held at the court houses in the several counties.
The law of this association does not make the place of holding meetings a condition precedent to the regularity or legality of the action of the association. The legal inference, that withdrawing from the accustomed place of worship, supposing it to be done with sufficient cause, by the deacons, trustees and a large majority of the association, is a withdrawal from the association, is not a sound one. That error and the others set out entitles the plaintiff to another trial.
The referee, after rejecting the evidence on the ground that it is inadmissible and irrelevant, goes on to say, that in coming to his conclusions on the questions of fact, he gave to this rejected evidence the same consideration as if it had not been rejected. (733) We are unable to comprehend the idea intended to be expressed
There is error. Report set aside and judgment reversed, and another trial ordered.
PER CURIAM. Judgment reversed, and venire de novo.
Cited: Vaughan v. Lewellyn, 94 N.C. 479.