John R. LEWIS, Plaintiff,

v.

Guy WOLFE, Maudie Wolfe, Ernest Lafferty and Lucy Lafferty, as Trustees for the Pentecostal Tabernacle Church, Defendants-Appellants,

and

Matthew D. Sims, Ethel Sims, also any successor Trustees of the Pentecostal Tabernacle Church, Clarence Fausett and Ernest Yates, as Trustees for the Church of God, Defendants-Respondents.

No. 8538.

Springfield Court of Appeals.

Missouri.

Jan. 11, 1967.

William A. R. Dalton, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendants-appellants.

Rolland L. Comstock, Springfield, for defendants-respondents.

HOGAN, Judge.

This is an interpleader action brought to determine who is entitled to surplus funds realized from the sale of church property under the power of sale in a statutory deed of trust. Section 443.410, RSMo 1959, V.A.M.S. Mr. Lewis, as successor trustee, brought the action, but he is merely a stakeholder; the adversaries in the case are the two groups of interpleaded defendants, each of which claims the right to the funds.

At the beginning of the time involved here, the Pentecostal Tabernacle was a small congregational church, meeting in rented quarters. The church was entirely self-governing and had no constitution or by-laws. Over a period of years, part of the church offerings were set aside as a building fund, and finally the congregation undertook to build a church of its own, but found it necessary to obtain a loan for that purpose. In order to secure the loan, it was necessary to vest the title to the real estate in trustees, and in September 1963, defendants Guy Wolfe, Ernest Lafferty and Matthew Sims were elected trustees for that purpose by the congregation. The record indicates that payments on the building loan were regularly made from February 20, 1964, through August 19, 1964, in sums sufficient to keep the payments current to December 25, 1964.

Some sort of dispute arose between two of the trustees, Wolfe and Lafferty, and Mrs. Fausett, the pastor of the church, in the summer and early fall of 1964. Whether or not this was a personal or doctrinal dispute is not entirely clear, but in any event factions developed and the trustees found it impossible to work in harmony. In the fall of 1964, defendants Wolfe and Lafferty attempted to secure the adoption of by-laws, which, as we read them, would incidentally have disqualified Mrs. Fausett as pastor, but the congregation rejected

them. After this, depending upon whose view one takes, one faction or the other left the church and no further payment was made on the loan. Matters drifted until October 1964, when Mrs. Fausett and Mr. Sims, perhaps with the assent of the congregation, called a special meeting to discuss and consider affiliation with the Church of God, a national church group.

On October 10, 1964, pursuant to notice given by Mrs. Fausett, the congregation assembled; officials of the Church of God presented that organization's denominational teachings and government, and offered the assembly the opportunity to affiliate. The congregation unanimously voted to do so. During the course of the meeting, the congregation declared all the church offices vacant and elected new officers. Defendants Matthew Sims (one of the original trustees), Clarence Fausett and Ernest Yates were elected as successor trustees. Records offered by defendants Wolfe and Lafferty indicate that they and their associates subsequently met and rented quarters in which to conduct worship services, and that in March 1965, the Wolfe-Lafferty group appointed a Mr. Carpenter to replace Mr. Sims. There was evidence on the part of defendants Wolfe and Lafferty that, at trial time, a congregation was meeting regularly in the rented quarters as the Pentecostal Tabernacle Church, and that a number of members of the congregation are people who formerly belonged to the other church prior to its affiliation with the Church of God. Each group, as we have noted, claims to be the lawful successor to the original set of trustees.

The trial court found, among other things, that the present Church of God organization is the lawful successor to the original Pentecostal Tabernacle, and ordered the surplus funds paid to defendants Sims, Fausett and Yates, as trustees for the Church of God. The appellants—that is, defendants Wolfe and Lafferty—have assigned error to this judgment in two principal respects. First, they maintain that they were not given proper notice of the meeting at which the congregation voted to affiliate with the Church of God, and therefore the action taken at that time was not binding as to them; further, they claim that in affiliating with the Church of God the Sims-Fausett faction departed from the faith, doctrine and established practices of the Pentecostal Tabernacle, and that they, as a faithful minority, are entitled to receive the proceeds remaining after foreclosure.

■■■ In dealing with the merits of the case, we must put it in proper perspective. Though many of the witnesses' answers are monosyllabic responses to long, pointed and suggestive questions by counsel, and much of the testimony is made up of conclusory statements, the result, fundamentally, represents a choice between conflicting versions of the facts. As the appellants point out, Rule 73.01(d), V.A.M.R., requires us to consider the case de novo upon both the law and the evidence, and we are not required, either by the constitution or by statute, to defer to the trial court's judgment if, upon consideration of the whole record, we find it to be clearly erroneous. Cross v. Gimlin, Mo., 256 S.W. 2d 812, 813[2, 3]; Redden v. Boehmer, Mo. App., 223 S.W.2d 127, 129[1, 2]. At the same time, where the evidence is conflicting and close, and particularly when the decision depends upon conflicting oral testimony and the credibility of witnesses, the appellate court should generally defer to the findings of the trial court unless it is satisfied they should have been otherwise. Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W.2d 833, 850[2]; In re Petersen's Estate, Mo., 295 S.W.2d 144, 148[3]. We may also again point out that we are not particularly concerned with the reasons assigned by the trial court, so long as the correct result was reached. Edgar v. Fitzpatrick, Mo., 377 S.W.2d 314, 318[12]; Producers Produce Co. v. Industrial Commission, 365 Mo. 996, 1004, 291 S.W.2d 166, 170[1].

The appellants' contention that they received insufficient notice of the meeting at which affiliation was voted is based in part upon the assumption that the set of by-laws which Mr. Wolfe and Mr. Lafferty proposed were actually adopted. We think this assumption is unwarranted. When the proposed by-laws were presented to the assembled congregation on August 24, 1964, they were rejected. It is true that on August 29, 1964, Mr. Wolfe and Mr. Lafferty met with the church secretary-treasurer and a Mr. Keck, and that the minutes of that meeting recite that " * * the By-laws were voted in by two members of the trustee board, Guy Wolfe and Ernest Lafferty." But in our view, it was beyond the authority of the trustees to bind the congregation in such manner, even had they voted unanimously to do so. Generally speaking, an officer or director of a religious society has powers analogous to those exercised by the managing directors of private corporations, Coates v. Parchman, Mo.App., 334 S.W.2d 417, 423[4], but the power to adopt by-laws resides in the membership, and not in the trustees, unless the charter or constitution of the church provides to the contrary. Klix v. Polish Roman Catholic St. Stanislaus Parish, 137 Mo.App. 347, 358, 118 S.W. 1171, 1174. No such charter. or constitutional provision appears in this case.

The appellants further develop their assignment touching the sufficiency of notice by arguing that even if the by-laws were not validly enacted, the notice given them was deficient because it was not timely and because it failed to specify the nature of the business to be transacted at the congregational meeting of October 10. In the view we take of this case, it is unnecessary to examine all these arguments in detail. A basic premise of appellants' argument that they received insufficient notice of the congregational meeting of October 10, 1964, is that as members of the church entitled to vote they had a right to such notice. We think it could reasonably have been found otherwise. Ultimately, what amounts to a voluntary withdrawal from or abandonment of a voluntary religious association like the Pentecostal Tabernacle is a question of law, once the facts are established. Kuhl v. Meyer, 42 Mo.App. 474, 482; Perry v. Tupper, 74 N.C. 722, 731. But at the same time, a member's right to vote, and hence his right to be notified of a meeting at which voting will take place, may be lost by voluntary withdrawal, 76 C.J.S. Religious Societies § 19b, p. 767, and in this instance it could reasonably be inferred from the record that the appellants abandoned the Pentecostal Tabernacle after the proposed by-laws were rejected in August 1964. Of course, it was Mrs. Lafferty's testimony, and her records indicated, that after the congregational meeting on August 26 at which the by-laws were rejected, Sims "stated he was quittin' and wouldn't be back," and that Sims refused to attend the trustees meeting of August 29; however, Mrs. Fausett's testimony was that Wolfe and Lafferty "left the church" in August of 1964 and did not thereafter function as trustees. Therefore, if the trial court chose to accept Mrs. Fausett's testimony and to reject the account given by the other defendants, it could have found that Mr. Wolfe and Mr. Lafferty dissociated themselves from the Pentecostal Tabernacle sometime before the association with the present organization was voted on, and that they had thereby deprived themselves of the right to notice as members entitled to vote. In our view, the appellants' point concerning insufficient notice is without merit.

The appellants' other point is that, as a faithful minority, they are entitled to possession and control of the church property, and consequently the money involved here, because affiliation with the Church of God constituted a real and substantial departure from the basic faith of the Pentecostal Tabernacle prior to the schism or division. They argue here that the Pentecostal Tabernacle did not have a formalized government, nor did it believe in affiliation with any other church group, while the Church

of God is highly organized, with a national headquarters and state and district superintendents, and that this difference is in fact a fundamental and substantial difference in doctrine, and distinguishes one church from the other.

We must say in candor that there was really no evidence of the substantive beliefs of either church. Mr. Lafferty, one of the original trustees, said, "Yeah," when asked if " * * * at the time that you contributed to this building fund, was it your understanding that you were contributing on the basis that this church would never affiliate with any national, state or county organization of churches," but that answer is the strongest evidence we can find that there was a doctrinal belief in the Pentecostal Tabernacle which inhibited association with other church groups. Mrs. Edna Mae King, who at the time of affiliation had been a member of the Pentecostal Tabernacle for fifteen years, was unable to recall any such "fact of belief," as counsel put the matter, and added that it was customary for the members of the Pentecostal Tabernacle to "go to lots of other churches' services." Mrs. Fausett, when asked about a theological belief forbidding association with a national organization, said that the matter " * * * wasn't brought up in the church at all," " * * * was never mentioned." One witness stated that the Pentecostal Tabernacle had no written articles of faith whatever.

 We think it would be a distortion of the law involved to say that the congregation's act of affiliation with the Church of God constituted a basic departure from the faith of the Pentecostal Tabernacle. The appellants invoke the well-established principle that in the event of a schism or division within a church, that faction which continues to adhere to the basic faith is entitled to possession and control of church property, regardless of whether it is a majority or minority faction, Mills v. Yount, Mo.App., 393 S.W.2d 96, 100[1]; Annos., 70 A.L.R. 75, 83, Section VI b (1931); 8 A.L.R. 105, 113, Section VI b (1920), but for this rule to apply to the action of a congregational church, where there is no ecclesiastical hierarchy or church judicatory with power to determine disputes, the will of the majority must show a real and substantial departure from the essential theological doctrine of the church, Mertz v. Schaeffer, Mo.App., 271 S.W.2d 238, 241[2], and in general, changes which affect only the business management or temporal control of the church, or the mere form of worship, are not departures within the meaning of the rule that a majority will forfeit its property rights by departing from the fundamental beliefs of the church. Bunnell v. Creacy, Ky.App., 266 S.W.2d 98, 100[3]; Mattson v. Saastamoinen, 168 Minn. 178, 209 N.W. 648[1]; Anno., 32 L.R.A. 92, 98. We can discover no substantial departure from the essential theological doctrine of the Pentecostal Tabernacle in the mere act of affiliation with a national church group, and in our view this point is also without merit.

For the reasons indicated, the judgment is affirmed.

STONE, P. J., and TITUS, J., concur.