In re the **MARRIAGE OF** Debra Lynn **HAUGH** and Michael Vernon Haugh, Sr.

Debra Lynn **HAUGH**, Respondent,

v.

Michael Vernon **HAUGH, Sr.,** Appellant.

No. 21875.

Missouri Court of Appeals, Southern District, Division One.

Oct. 28, 1998.

---

John T. McMullan, Pelts, McMullan & Edgington, Kennett, for Appellant.

Charles S. Williams, Kennett, W. Edward Reeves, Caruthersville, for Respondent.

Before PREWITT, P.J., and CROW and BARNEY, JJ.

PER CURIAM.

Debra Lynn Haugh ("Debbie")[1] brought this action to dissolve her marriage to Michael Vernon Haugh, Sr. ("Mike").[2] Mike, in an amended answer, denied the marriage was irretrievably broken. The trial court, after hearing evidence, found otherwise.

The trial court entered judgment which, *inter alia:* (a) dissolved the marriage; (b) granted Debbie "general care, custody and control" of the parties' six children;[3] (c) awarded Mike "reasonable rights of visitation" with the children "under the supervision of [Debbie]"; (d) ordered Mike to pay child support of $150 per month per child; (e) divided the marital property; (f) awarded Debbie a $7,500 "judgment" against Mike "to equalize the division of marital property."

Mike appeals, averring the trial court erred in (1) finding the marriage irretrievably broken, (2) granting Debbie "general care, custody and control" of the children, and (3) classifying a parcel of real estate as marital property.

■■ Appellate review of a judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). There, the court construed the predecessor of Rule 73.01(c)[4] to mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. In *Mehra v. Mehra*, 819 S.W.2d 351, 353[1] (Mo. banc 1991), the court held the *Murphy* standard applies to appellate review of decrees of dissolution of marriage. In applying that standard, an appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Mehra*, 819 S.W.2d at 353[2]. That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

The parties married November 10, 1981. It is unnecessary to set forth the names of their children; however, the children's birth dates are relevant in that the factors consid-

---

1. Ms. Haugh, testifying at trial, identified herself as "Debbie Haugh." For convenience and clarity, this opinion refers to her as "Debbie." No disrespect is intended.

2. Mr. Haugh, testifying at trial, identified himself as "Mike Haugh." For convenience and clarity, this opinion refers to him as "Mike." No disrespect is intended.

3. The judgment does not specifically provide for "legal custody" or "physical custody." *See:* § 452.375, RSMo Supp.1995. No issue is raised about that in this appeal.

4. References to rules are to Missouri Rules of Civil Procedure (1998).

ered by the trial court in determining custody included a report by the children's guardian ad litem regarding his interviews with the three eldest children. The birth dates were October 10, 1982, September 15, 1984, April 27, 1986, January 11, 1990, October 17, 1991, and June 1, 1993. The parties separated July 26, 1995.

In addressing Mike's claims of error, this court begins with his second point. As reported earlier, it assails the trial court's custody determination. The point reads:

"The [trial court] erred in awarding the general care, custody and control of the unemancipated minor children of the marriage to [Debbie], subject to supervised visitation awarded to [Mike] in that such an order is contrary to the weight and sufficiency of the evidence presented to the Court at trial."

Rule 84.04(d) reads, in pertinent part:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. . . ."

The purpose of Rule 84.04(d) and the necessity of obeying it are extensively discussed in *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978), one of the most frequently cited cases in Missouri jurisprudence.

■ In *J.A.D. v. F.J. D., III*, 978 S.W.2d 336 (Mo. banc 1998), the Supreme Court of Missouri found an appellant's points relied on defective under Rule 84.04(d). The court explained that a point relied on must meet three requirements: (1) it must state the trial court's action or ruling about which the appellant complains; (2) it must state why the ruling was erroneous; and (3) it must state what was before the trial court that supports the ruling appellant contends should have been made. 978 S.W.2d at 338.

One of the points relied on in *J.A.D.* read:

"THE TRIAL COURT ERRED IN AWARDING SOLE CUSTODY OF THE CHILDREN TO FATHER BECAUSE THE CUSTODY DETERMINATION WAS NOT IN THE BEST INTERESTS OF THE CHILDREN AS REQUIRED BY MISSOURI LAW IN THAT THE EVIDENCE CLEARLY SHOWED MOTHER WAS THE BETTER CHOICE AS CUSTODIAN AND MOTHER SHOULD HAVE BEEN GIVEN AT LEAST JOINT CUSTODY RIGHTS."

978 S.W.2d at 338–339.

The Supreme Court held the point defective for two reasons, one of which was that it failed to state what was before the trial court that supported the ruling the appellant contended should have been made. 978 S.W.2d at 339. The Supreme Court reviewed the point for plain error only. 978 S.W.2d at 339.

■ Mike's second point is afflicted with the same defect as the above-quoted point from *J.A.D.* Mike's second point fails to set forth what was before the trial court that supports the ruling Mike contends should have been made. Mike's second point presents only the unadorned assertion that the trial court's custody determination "is contrary to the weight and sufficiency of the evidence." The point yields no clue as to wherein or why that is so, and supplies no hint as to what evidence supported an award of "general care, custody and control" of the children to Mike.

Missouri cases have consistently held points relied on such as Mike's second point present nothing for review. *Gibson v. Gibson–Cato*, 941 S.W.2d 868, 870–71[1] (Mo. App. S.D.1997); *Porter v. Emerson Electric Co.*, 895 S.W.2d 155, 160–61 (Mo.App. S.D. 1995); *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 339[21] (Mo.App. S.D. 1991); *Best v. Culhane*, 677 S.W.2d 390, 394 (Mo.App. E.D.1984); *Tripp v. Harryman*, 613 S.W.2d 943, 950 (Mo.App. S.D.1981).

■ This court holds Mike's second point presents nothing for review. However, consistent with the Supreme Court's treatment of the defective point in *J.A. D.*, this court will review Mike's second point for plain error per Rule 84.13(c). That rule grants an appellate court discretion to consider unpreserved errors if the court finds manifest in-

justice or miscarriage of justice resulted therefrom.

In making its custody determination, the trial court found:

"[Mike] has used excessive force by frequent corporal punishment of the children as reported by the guardian ad litem and therefore visitation with said children by [Mike] under the supervision of [Debbie] is necessary because unrestricted visitation by [Mike] would endanger the children's physical health or impair their emotional development and such visitation is in the best interest of said children and will protect their interest as victims of domestic violence[.]"

▪ Having assiduously studied the evidence, including the guardian ad litem's report of his interviews with the three eldest children, and mindful that credibility of the witnesses was for the trial court's evaluation, this court holds the trial court committed no error, plain or otherwise, in its custody determination.[5] This court finds the trial court's custody determination is supported by substantial evidence and is not against the weight of the evidence, that no error of law appears therein, and that an opinion recounting the evidence on the custody issue would have no precedential value. Accordingly, the trial court's custody determination is affirmed in compliance with Rule 84.16(b)(1) and (5).

This court next addresses Mike's first point; it reads:

"The [trial court] erred in finding that [Mike] had behaved in such a way that [Debbie] cannot be reasonably be expected to live with [him] and therefore, the marriage between the parties cannot be preserved and therefore, the marriage is irretrievably broken in that clear, cogent and convincing evidence was presented at trial which establishes that [Debbie] and [Mike] behaved very predictably toward one another and lived in an alternative lifestyle

by mutual choice for an extended number of years, thereby establishing that [Debbie] could reasonably be expected to live with [Mike]."

▪ Mike's first point is plagued by the same flaw that afflicts his second. The first point avers there was "clear, cogent and convincing evidence" that Debbie could reasonably be expected to live with Mike, hence the trial court erred in finding the marriage irretrievably broken. However, the point surrenders no inkling as to what that evidence was, and leaves this court to wonder wherein and why such evidence established that Debbie could reasonably be expected to live with Mike.

The only intimation about such evidence is the bare averment that the parties "lived in an alternative lifestyle by mutual choice for an extended number of years." The nature of the lifestyle, and how it demonstrated Debbie could reasonably be expected to continue living with Mike, are consigned to speculation.

For the reasons set forth in this opinion's discussion of Mike's second point, this court holds his first point presents nothing for review. Nonetheless, this court has examined all of the evidence pertinent to the issue of whether the marriage is irretrievably broken.

Viewed favorably to the trial court's finding on that issue, the evidence is sufficient to establish that Mike's behavior toward Debbie and the children became increasingly dictatorial and repressive, ultimately becoming so intolerable that Debbie fled with the children. In the words of Debbie's brief: "[C]redible evidence [demonstrated] that Mike placed unreasonable demands upon [Debbie] and the parties' children and behaved in an abusive and dictatorial manner toward [them], and [Debbie's] toleration of such conduct for a period of time does not imply her consent to such behavior for all time."

---

5. The record reveals appalling instances where Mike inflicted excessive physical punishment on the two eldest male children for trivial misbehavior. The guardian ad litem's report confirms the three eldest children's fear of Mike. Although the record contains no transcript of the guardian's

interviews of the three eldest children, neither party objected to the trial court's consideration of the guardian's report in making the custody determination, and no issue about it is raised in this appeal.

■ Mike's first point and the argument following it are nothing more than a thinly-camouflaged invitation to this court to make its own independent assessment of the credibility of the witnesses—an invitation this court must decline. An appellate court may not substitute its judgment for that of the trial court on credibility issues. *Dukes v. Dukes*, 859 S.W.2d 264, 268[4] (Mo.App. S.D. 1993); *Estate of Graves*, 684 S.W.2d 925, 928[2] (Mo.App. S.D.1985).

■ Viewed favorably to the decree, the evidence amply demonstrated Mike behaved in such a way that Debbie could not reasonably be expected to live with him. § 452.320.2(1)(b), RSMo 1994. Accordingly, the trial court committed no error, plain or otherwise, in so finding. This court holds the trial court's determination that the parties' marriage is irretrievably broken is supported by substantial evidence and is not against the weight of the evidence, that no error of law appears in that determination, and that an opinion recounting the evidence on that subject would have no precedential value. The dissolution of the parties' marriage is affirmed in compliance with Rule 84.16(b)(1) and (5).

That brings this court to Mike's third point—a claim of error regarding a parcel of real estate. It presents the only substantial issues in this appeal. Resolving them requires an account of the relevant facts.

Mike testified he became a Christian in 1979, the year he "took bankruptcy" after "running" a tavern "[a]bout three years." He "took a correspondence course" about the Bible and was "ordained" to the ministry in 1982 or 1983, "somewhere along in there."

As this court comprehends Mike's testimony, he and Debbie were attending the "Old Fashioned Bible Church" in Mokane [6] in 1982. Because of low attendance, the pastor decided "to leave and just shut it down."

Mike persuaded the pastor to "turn [it] over" to him (Mike).

This court infers from Mike's testimony that he thereafter renamed the church "Mokane Bible Church." Mike preached there, but maintained secular employment.

The real estate that is the subject of Mike's third point was acquired in March 1992. It lies in Callaway County. This opinion henceforth refers to it as "the disputed realty."

Debbie described the disputed realty as ten acres in "rural Mokane." According to Debbie, an "eight-bedroom house with a basement and an attic and two other floors" sits on the ten acres.

Mike's description of the structure differed from Debbie's. According to Mike: "It's not just a house, and it doesn't even look like a house.... It was a 12–bedroom community house. It has a chapel ... on one floor."

Like their descriptions of the structure, the parties' testimony regarding acquisition of the disputed realty also conflicted.

Debbie avowed the purchase price was $40,000. Asked whether she and Mike paid "anything down on the purchase price," Debbie replied: "Yes.... I think it was about 10,000." Asked where the $10,000 came from, Debbie answered: "It was from the sale of the mobile home that we had been living in." She explained that she and Mike "financed" the rest of price—"approximately $29,000"—by borrowing from a bank. The disputed realty was "deeded" to Debbie and Mike.

Mike's version of the acquisition was: "We had a church building in town that we had before that[ 7] ... and we sold it. And with the ... proceeds that we had from ... the sale of the church building there along with ... some of our own cash that we put in it, we put it down as ... a down payment on

---

6. Mokane is in Callaway County. This court gleans from Debbie's testimony that she and Mike resided in Cole County after they married, then moved to Callaway County in 1983. They were residing there at the time of the separation. Debbie, taking the children with her, moved to Dunklin County.

7. This court infers Mike was referring to the church he acquired from the pastor who was going to close it—the church Mike renamed Mokane Bible Church.

the ... community building[8] down there." Mike's narrative continued: "We tried to ... buy it in the church name to begin with, but we couldn't get a mortgage on it ... in the church name, because ... [i]t just didn't have enough proceeds coming into it.... They wanted people on it. So my wife and I ... assumed the note."

Debbie recounted that she, Mike and the children "moved into the house" on the disputed realty in July 1992.[9] Mike conducted "church services" there.

On a date unrevealed by the record, but inferably after the parties acquired and occupied the disputed realty, Mike heard R.G. Stair "preaching on the radio."

Stair's deposition, presented by Mike at trial, revealed Stair is pastor of Faith Cathedral Fellowship, Incorporated in Walterboro, South Carolina, and also conducts a "radio ministry." Mike, believing Stair to be a "Godly man," began communicating with him and eventually took Debbie and the children to visit him. Stair invited Mike to preach "at their tabernacle services and put it on the radio."

Mike recounted that after he preached, he was asked by Stair whether he (Mike) "had any debts." Mike told Stair the disputed realty "had a debt of about $30,000 on it." Mike quoted Stair as saying borrowed money should not be used "in the Lord's work." Stair subsequently sent Mike $30,000, which paid off the debt on the disputed realty. Mike avowed Stair sent no contract with the payment.

Debbie's account of Stair's payment was essentially the same as Mike's, except Debbie recalled the sum Stair paid was "about $28,-000." Debbie confirmed there was no note or other document evidencing any obligation to Stair.

In his deposition, Stair explained he "paid off" the debt on the disputed realty so Mike "would not have the burden of doing that." However, added Stair: "[W]e required that the land then be deeded to the church with no one man owning it."

In compliance with Stair's request, Debbie and Mike signed and acknowledged a warranty deed March 31, 1995, conveying the disputed realty to: "Trustees of the Mokane Bible Church." The deed was filed for record with the Callaway County Recorder that date. This opinion henceforth refers to the deed as "the 1995 deed."

A curious reader may wonder why the 1995 deed purported to convey the disputed realty to trustees instead of simply naming Mokane Bible Church as grantee. The apparent answer is that both Debbie and Mike testified Mokane Bible Church is not incorporated.

In *Ervin v. Davis*, 355 Mo. 951, 199 S.W.2d 366 (1947), a deed conveyed land to five named individuals as trustees for use as a parsonage by pastors of an unincorporated church. 199 S.W.2d at 367–68. The Supreme Court explained: "Since the church was an unincorporated association it was compelled to hold its property by trustees." *Id.* at 370[10].

Debbie testified she signed the 1995 deed because "Mike told me to." Debbie conceded the reason for the 1995 deed was that Stair "paid that debt off."

Debbie identified Petitioner's Exhibit 4, a two-page typewritten document, as "the church constitution." Asked who "put [it] together," Debbie responded, "Mike did." Her testimony continued:

"Q. Did you type it?

A. Yes."

Exhibit 4, after identifying the church as Mokane Bible Church, provides, *inter alia:*

"Article III Organization/Government

 . . . .

C. Michael V. Haugh Sr. is the founding pastor and shall serve for life as the earthly ruling authority of this church.

D. Upon the death of the founding pastor, the church government will be changed from pastor rule to a board of trustees, as the ruling authority....

 . . . .

8. This court infers Mike was referring to the disputed realty.

9. At that time, the parties had only five children. Their sixth child was born the following year.

F. The ruling authority ... shall have the following authority and powers ...:

....

2. To purchase, receive, take by gift, bequest, or otherwise acquire, and to own, hold, and use any real or personal property or interest therein as may be deemed necessary for carrying on its legitimate affairs.

....

Article V Dissolution of the Church

This church shall stay in existence unless dissolved by a unanimous vote of the membership and approval of the ruling authority. If dissolved, all proceeds and assets of Mokane Bible Church shall be given to Faith Cathedral Fellowship Incorporated ... Walterboro, South Carolina...."

Mike and Debbie signed Exhibit 4 on July 10, 1995, some three months after they signed the 1995 deed.

According to Debbie, Mike conducted church services every day. However, the services were open to the public just "once a week."[10] Asked how many people "outside the family" attended the public services, Debbie replied: "[M]ost of the time, there was nobody else. Sometimes there would be two dozen."

In addition to being the site for church services and the residence of the parties and their children, the disputed realty was on some occasions the residence of others. Debbie recounted that while she was living there, "a single man ... lived there for two months; and a single woman came and she only lasted five days."

At trial (December 13, 1996), Mike presented testimony by a woman—Diana. She explained that she, her husband, and their eight-year old daughter reside "in the home that Mike also lives in." They (Diana, her husband, and their daughter) moved in

around "the middle of October [1995]," a few months after Debbie and the parties' children departed. Before moving there, Diana, her husband, and their daughter had to be approved by Stair.

Diana testified that her husband "hands his paycheck over to Brother Mike." Diana continued: "If we need to ... go somewhere ... we ask Brother Mike for some money; and he gives us some money to go and get what we need." Asked whether other families reside on the disputed realty, Diana answered: "We had one other family that lived there on a permanent basis. They were there for about nine months." According to Diana, the average attendance at the public services is "under ten adults, like about ... seven[.]"

The trial court held, *inter alia:*

"[T]here is not sufficient credible evidence to believe that Mokane Bible Church is an incorporated religious association or other entity legally organized and existing which is capable to [sic] holding legal title to property, nor is there sufficient credible evidence to show that Mokane Bible Church is legally an entity or branch of Faith Cathedral Fellowship, Incorporated, nor otherwise owned or controlled by said corporation and therefore, the following property is found to be marital property and is awarded as follows:

A. To respondent [Mike]:

1) The parties['] residence and land in Callaway County, Missouri, as described in Exhibit 'A' which is attached hereto and incorporated by reference herein[.]"[11]

The judgment awards certain other marital property to Mike, then awards certain marital property to Debbie. The judgment continues:

"A judgment in favor of petitioner [Debbie] and against respondent [Mike] in the sum of $7,500.00 to equalize the division of

10. This court gleans from the record that the public services were held on the Sabbath, described by one attendee as from sundown Friday until sundown Saturday.

11. Exhibit A, appended to the judgment, sets forth a legal description identical to the description in the 1995 deed except for one discrepancy.

The final course—the tract is described by courses and distances—in the 1995 deed calls for a turn to the "left," whereas the final course in Exhibit A calls for a turn to the "right." No issue about the discrepancy is raised in this appeal.

marital property which judgment shall be a lien on the real estate described in paragraph A(1) above until satisfied in full."

Mike's third point:

"The [trial court] erred in finding that the Mokane Bible Church is not capable of holding legal title to certain property in question, and the Court further erred in finding that the Mokane Bible Church is not legally an entity or branch of Faith Cathedral Fellowship, Incorporated, and therefore, finding church property to be marital property in that:

A. Clear, cogent and convincing evidence was presented at trial which establishes that Petitioner and Respondent excluded said property from marital property in writing prior to the filing of the Petition For Dissolution of Marriage by the Petitioner.

B. Clear, cogent and convincing evidence was presented at trial which establishes that Brother R.G. Stair was the source of funds which caused the large debt on said property to be paid, and that both Petitioner and Respondent were fully aware of the arrangements made with Faith Cathedral Fellowship, Inc. regarding the payment of said debt and both Petitioner and Respondent intended to comply with the requests of Brother R.G. Stair, specifically that the land be deeded to the church with no one man owning it."

This court infers that the reference to "certain property in question" in the above point is a reference to the disputed realty. As this court fathoms the above point, the first hypothesis of error is that the trial court mistakenly ruled Mokane Bible Church is incapable of "holding legal title to property."

▉▉▉▉▉▉ Analysis of that premise begins by recognizing that an unincorporated religious association is without capacity to hold and pass title to real estate. *Trinity Pente-*

costal Church of Joplin, Mo., Inc. v. Terry, 660 S.W.2d 449, 456[6] (Mo.App. S.D.1983), citing *Farm & Home Savings & Loan Ass'n v. Armstrong,* 337 Mo. 349, 357, 85 S.W.2d 461, 465–66[7] (banc 1935). As reported earlier, both Debbie and Mike testified Mokane Bible Church is not incorporated. Consequently, had the 1995 deed named Mokane Bible Church as grantee, the 1995 deed would have been "a conveyance to no one." *Tucker v. Diocese of West Missouri,* 264 S.W. 897, 901[4] (Mo.1924).

The preceding paragraph demonstrates the trial court committed no error in finding Mokane Bible Church is an unincorporated religious association and hence incapable of holding legal title to the disputed realty. The first hypothesis of error in Mike's third point is meritless.

It appears from the argument following Mike's third point, read in conjunction with paragraphs "A" and "B" of the third point, that his second hypothesis of error is that the disputed realty was not marital property at the time Debbie filed her petition for dissolution of marriage.[12] Mike reminds this court that four months before Debbie filed her petition, she and he signed the 1995 deed conveying the disputed realty to: "Trustees of the Mokane Bible Church." Mike maintains this event demonstrates the parties intended that the disputed realty be "excluded from marital property, and be owned by the Trustees of the Mokane Bible Church." According to Mike: "This intent is clear, regardless of whether the Mokane Bible Church is or is not capable of actually holding the title which has been intended to be transferred to it."

As we have seen, an unincorporated religious association may hold real estate by trustees. *Ervin,* 199 S.W.2d at 370[10]. This court infers Mike believes the 1995 deed transferred ownership of the disputed realty to trustees of Mokane Bible Church, hence the disputed realty was not owned by him and Debbie when she filed her dissolution petition.

12. Debbie's petition was filed July 27, 1995, seventeen days after she and Mike signed "the church constitution" (Petitioner's Exhibit 4, seg-ments of which are quoted earlier in this opinion).

■ Analysis of this theory begins with § 452.330.3, RSMo Cum.Supp.1997, which provides that all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property. The presumption may be overcome, but a party seeking to overcome it must present clear and convincing evidence. *In re Marriage of Gilmore,* 943 S.W.2d 866, 870[1] (Mo.App. S.D.1997); *Coleberd v. Coleberd,* 933 S.W.2d 863, 868 (Mo.App. S.D.1996).

As previously noted, the disputed realty was "deeded" to Debbie and Mike when they acquired it in March 1992. It is clear from the statute and cases cited in the preceding paragraph that the disputed realty was presumed to be marital property, and the burden was on Mike to overcome that presumption by clear and convincing evidence.

From the argument in Mike's brief, we deduce that the evidence on which he relies is, first, his testimony that the down payment on the disputed realty consisted primarily of proceeds from the sale of the "church building" where he began preaching around 1982 after the previous pastor abandoned it.[13] Mike testified that the "church building" was "completely in the name of Mokane Bible Church."

Irrespective of how the previous "church building" was "titled," the evidence clearly establishes that the disputed realty was conveyed to Debbie and Mike in March 1992. It was therefore presumed to be marital property. § 452.330.3.

The evidence also clearly establishes that Mokane Bible Church has never been a legal entity capable of owning real estate; consequently, Mokane Bible Church could not have acquired ownership of the disputed realty in March 1992, or anytime since.

■ This court holds that when the parties acquired the disputed realty in 1992, they acquired it as marital property in that (a) it was presumed to be marital property per § 452.330.3, and (b) Mike presented no clear and convincing evidence to overcome that presumption. Consequently, the disputed realty was marital property when Debbie filed her petition for dissolution unless the 1995 deed transformed the disputed realty from marital property into some other genre.

■ The 1995 deed obviously did not transfer ownership of the disputed realty to Mokane Bible Church. That is because (a) Mokane Bible Church was not the named grantee, and (b) Mokane Bible Church, an unincorporated religious association, has no capacity to own real estate. Therefore, the disputed realty remained marital property unless the 1995 deed transferred ownership to the "Trustees of the Mokane Bible Church."

Unlike the deed in *Ervin,* 199 S.W.2d at 368, which conveyed land to five named individuals as trustees, the 1995 deed identified no named trustee as grantee and did not reveal how many grantees there were. Nonetheless, this court shall assume—without deciding—that if, at the time Mike and Debbie signed and filed the 1995 deed, there were individuals who had been properly chosen as trustees by Mokane Bible Church, the 1995 deed would have transferred ownership of the disputed realty to them.

Mike's brief identifies no evidence that Mokane Bible Church chose trustees prior to, or simultaneously with, the execution of the 1995 deed. As recounted earlier in this opinion, Mike and Debbie signed "the church constitution" (Petitioner's Exhibit 4) on July 10, 1995, some three months *after* they signed the 1995 deed.

This court recognizes an argument can be made that: (1) Mike and Debbie constituted the membership of Mokane Bible Church when they signed the constitution, and were thus empowered to adopt it, *see: Lewis v. Wolfe,* 413 S.W.2d 314, 318 (Mo.App.1967), and were likewise empowered to choose the officers of Mokane Bible Church, *see: Coates v. Parchman,* 334 S.W.2d 417, 424 (Mo.App.

---

13. As recounted earlier, Debbie avowed the down payment on the disputed realty came from the sale of the "mobile home" in which the parties and their children had been residing. One possible inference from the record is that the "mobile home" referred to by Debbie and the "church building" referred to by Mike are the same structure—perhaps a manufactured house of modest size that can be moved from one site to another.

1960), and (2) the designation of Mike as "the earthly ruling authority" of Mokane Bible Church in the constitution, coupled with the provision vesting the ruling authority with power to own real estate necessary for carrying on the "legitimate affairs" of Mokane Bible Church, was the legal equivalent of appointing Mike a trustee within the meaning of *Ervin,* 199 S.W.2d at 370[10].

The merit, if any, inherent in the above argument need not be determined inasmuch as the events on which the argument hinges occurred more than three months *after* the parties signed and filed the 1995 deed. The record is bare of any evidence that Mike or anyone else was chosen as a trustee for Mokane Bible Church prior to, or contemporaneously with, execution of the 1995 deed.

This court therefore holds the 1995 deed was "a conveyance to no one." *Cf. Tucker,* 264 S.W. at 901[4]. Consequently, the 1995 deed did not divest Debbie and Mike of ownership of the disputed realty or impair its status as marital property. The second claim of error in Mike's third point is denied.

The final claim of error in Mike's third point, as this court perceives it, is that the trial court wrongly held the evidence insufficient to establish that Mokane Bible Church is legally an entity or branch of Faith Cathedral Fellowship, Incorporated ("FCFI").

While it appears the evidence, viewed favorably to the trial court's holding, provides ample support for such holding, this court need not resolve the issue. Having decided the disputed realty was acquired as marital property and remained so throughout the parties' marriage, the nature of the relationship between Mokane Bible Church and FCFI is immaterial to any issue between Mike and Debbie raised by Mike in this appeal.

Judgment affirmed.