**Willa Dean LINTON,
Appellant/Respondent,**

v.

**James Calvin LINTON,
Respondent/Cross–
Appellant.**

**Nos. 25176, 25187.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 17, 2003.

200

W. Henry Johnson, Sims, Johnson, Wood & Farber, Neosho, for Appellant.

Greg R. Bridges, Evenson & Carlin, L.L.C., Pineville, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Willa Dean Linton ("Wife") appeals from the judgment of the Circuit Court of McDonald County dissolving her thirty-seven year marriage with James Calvin Linton ("Husband"). In her sole point relied on, Wife maintains the trial court's award of $200.00 a month maintenance from Husband constituted error and an abuse of discretion by the trial court and she requests additional maintenance from Hus-

band. Husband raises two points on his appeal. In his first point, Husband chiefly posits error on the part of the trial court in dividing the marital property, asserting the distribution of the property was inequitable because Wife received "too great a proportion of cash assets to which she made no contribution." In his second point Husband maintains the trial court erred in granting Wife any maintenance at all.

" 'In a court-tried case, the decree of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.' " *Kester v. Kester,* 108 S.W.3d 213, 218 (Mo.App.2003) (quoting *Rivers v. Rivers,* 21 S.W.3d 117, 121 (Mo. App.2000)). "[W]e review the evidence and inferences in the light most favorable to the trial court's decision and disregard all contrary evidence and inferences." *Id.* "Judging credibility and assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.' " *Love v. Love,* 72 S.W.3d 167, 171 (Mo.App.2002) (quoting *In re Marriage of Haugh,* 978 S.W.2d 80, 82 (Mo. App.1998)). "We presume that the trial court took into account all evidence and believed such testimony and evidence that is consistent with its judgment." *Id.* "The party challenging the trial court's judgment in a dissolution of marriage has the burden of demonstrating error." *Id.*

The record shows that Wife and Husband were married on June 5, 1964. At the time of trial, Wife was 55 years of age. Wife being 17 years of age and Husband being 18 years of age at the time of their marriage, we discern that Husband was 56 years of age at the time of trial.

Wife testified that during the first twelve to fifteen years of the marriage she stayed home to care for the three children born of the marriage. Wife then worked part-time as a cook for the Southwest City School for three or four years. Thereafter, she attended cosmetology school, and eventually opened her own beauty shop in Southwest City in 1981 or 1982. Wife operated that business until the time of the separation of the parties.

Wife related she took home approximately $400.00 per month while operating the beauty shop. She testified that with the monies she earned, she paid for groceries for the family, presents for the children, and automobile and other miscellaneous expenses. Wife also related that she suffered from shoulder problems, flat feet, back trouble, and migraines.

Wife testified she was then living with her mother and was not incurring any rent or utility expenses. However, she set out that she anticipated expenditures in the range of $2000.00 per month once her marriage was dissolved and she lived on her own.

Husband testified that he had been working at a phone company for almost thirty-three years. He related his take home pay was in the vicinity of $700.00 to $800.00 a week. Husband further testified that he alone funded all of the investments identified in the marital property schedules presented to the trial court and felt that Wife was not entitled to half the marital properties because he had earned all the money used to purchase the marital assets. He related that his primary retirement account was funded entirely by his employer and no money was taken from his paycheck to fund the account.

Husband also testified that he had previously been diagnosed with thyroid cancer some two and one half years prior to trial, underwent surgery for its removal, re-

ceived radiation therapy, and that as of the time of trial, the cancer had not returned.

Both parties acknowledged no outstanding marital obligations existed and their three children were emancipated.

The value of marital assets awarded to Wife by the trial court amounted to $286,749.77, and the value of marital assets awarded to Husband totaled $288,459.00.[1] Husband was ordered to pay Wife modifiable maintenance in the amount of $200.00 per month.

We first address Wife's motion to dismiss Husband's first point of his appeal. Husband's first point sets out:

> The court erred in it's [sic] division of marital property in this case as no factual findings were made as to the value of certain marital property and it's [sic] division as requested by [Husband], and in that the distribution of property was inequitable in that [Wife] received too great a proportion of cash assets to which she made no contribution.

Wife maintains this point fails to comply with the provisions of Rule 84.04(d)(1) because the point fails to "state precisely the legal reasons for [Husband's] claim [of] reversible error" and further, fails to "explain in summary fashion why[, in the context of the case, those] legal reasons support the [claim of] reversible error."[2] We agree.

■ Points relied on in a cross appeals are subject to the same requirements of Rule 84.04 as initial appeals. *See M.C. v. Yeargin,* 11 S.W.3d 604, 611 (Mo.App. 1999). Points relied on must follow three requirements: (1) state the ruling or action of the trial court from which the appellant complains; (2) why it is erroneous;

and (3) what evidence was before the court that would support the correct ruling. *J.A.D. v. F.J.D.,* 978 S.W.2d 336, 338 (Mo. banc 1998).

■ Husband's point relied on is merely a bald assertion that the trial court erred in not entering factual findings and in dividing the marital property. *See id.* at 339. Abstract statements, standing alone, do not comply with Rule 84.04(d). *In re T.E.,* 35 S.W.3d 497, 507 (Mo.App.2001); *In re Marriage of Beeler,* 26 S.W.3d 610, 613 (Mo.App.2000); *In re Marriage of Thomas,* 21 S.W.3d 168, 178 (Mo.App. 2000); *see also Thummel v. King,* 570 S.W.2d 679, 685–86 (Mo. banc 1978).

■ The purpose of the requirements regarding points relied on is to give notice to the party opponent of the precise matters that must be contended with and answered and "to inform the court of the issues presented for resolution." *Thummel,* 570 S.W.2d at 686. If this Court must resort to searching the argument portion of the brief or the record on appeal to determine or clarify the nature of the asserted claims, we may interpret the claims differently than the opponent or than was intended by the party asserting the claim. *See id.* The appellate court's function is to examine trial court error asserted by the party, not to serve as advocate for any party to an appeal. *See id.* Where a brief fails to comply with the applicable rules and does not sufficiently advise the court of the contentions asserted and the merit thereof, "the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking addi-

---

1. Without assigning a monetary value, the court also awarded each party one half of the couple's stocks in Dollar General, GET Centurytel Inc., and Qwest.

2. Rule references are to Missouri Court Rules (2003).

tional research and briefing to supply the deficiency." *Id.* "Courts should not be asked or expected to assume such a role." *Id.* While we could dismiss Husband's first point of his appeal, we, nevertheless, exercise our discretion and review the record for plain error pursuant to Rule 84.13(c).

We initially note that " '[a]ll property acquired by either spouse subsequent to the marriage, and prior to a decree of legal separation or dissolution is presumed to be marital property regardless of whether title is held individually or jointly.' " *Coleberd v. Coleberd,* 933 S.W.2d 863, 868 (Mo.App.1996) (quoting *Kettler v. Kettler,* 884 S.W.2d 729, 731 (Mo.App. 1994)); *see Clark v. Clark,* 919 S.W.2d 253, 254 (Mo.App.1996).

Furthermore, the trial court is afforded broad discretion in its division of marital property. *Myers v. Myers,* 47 S.W.3d 403, 407 (Mo.App.2001). "[A]n appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Wright,* 990 S.W.2d 703, 709 (Mo.App. 1999).

As best we discern from our review of the argument portion of Husband's first point, he appears to present two primary complaints. He first questions the trial court's valuation of the marital home. Husband argues the fair market value of the home was $80,000.00, while Wife's appraiser testified to a value of $117,750.00. The court found the fair market value of the marital home and attendant real estate to be $107,000.00. The record reveals that a week before trial, Husband's appraiser had valued the property at $97,000.00. "Inasmuch as (1) the value assigned by the trial court was within the range of values in the evidence ... and (2) an appellate

court defers to the trial court even if the evidence could support a different conclusion," we hold the trial court did not err in valuing the marital home and property at $107,000.00. *Marriage of Stephens,* 954 S.W.2d 672, 675 (Mo.App.1997).

Husband also complains of the trial court's division of the parties' marital property. He argues he was the primary source of income during the marriage of the parties and should have been accorded more than fifty percent of the marital properties. While the record shows Husband was the primary bread winner during the marriage, the record also shows that Wife stayed home for fifteen years and was the primary care-giver of the parties' children. Wife also worked as a part-time cook at school five days a week for at least three years, graduated from cosmetology school, and worked as a beautician. Although she relates she brought home only about $400.00 a month, she also testified she bought groceries for the family, paid for gifts and car expenses together with other miscellaneous expenses. The testimony of a daughter also showed that Wife contributed to the construction of the parties' home.

Having taken into account the factors enumerated in section 452.330.1 [3] and recognizing that "[t]here is no formula respecting the weight to be given by the trial court to the relevant factors set out in section 452.330.1 ...," we determine that the record supports the trial court's award of a virtually equal division of marital property. *Kester,* 108 S.W.3d at 224. We hold no manifest injustice or miscarriage of justice was perpetrated upon Husband. *Wright,* 990 S.W.2d at 709.

We now turn to Wife's sole point and Husband's second point, each of which

**3.** All statutory references are to RSMo 2000, unless otherwise set out.

challenges the trial court's award of maintenance.

■ In her sole point relied on Wife argues the trial court's award of maintenance is insufficient to meet her reasonable needs, while Husband complains in his second point relied on that the trial court improperly awarded maintenance of $200.00 per month. Initially we observe that:

"[a]n appellate court must affirm the circuit court's award of maintenance unless there is no substantial evidence to support the award.... We afford the circuit court a great deal of discretion in awarding maintenance. In the absence of a finding that the amount is patently unwarranted and wholly beyond the means of the spouse who pays, this court will not interfere with the circuit court's award of maintenance. Husband, who contends the circuit court erred in awarding *any* maintenance to wife, bears the burden of proving the maintenance award 'shocks' this court's sense of justice."

*In re Marriage of Pahlow*, 39 S.W.3d 87, 93 (Mo.App.2001) (quoting *Burnett v. Burnett*, 18 S.W.3d 27, 29 (Mo.App.2000)) (citations omitted); *see Allen v. Allen*, 927 S.W.2d 881, 885 (Mo.App.1996).

■ "In deciding if a spouse is entitled to maintenance, the question before the court is whether the party seeking maintenance can meet his or her reasonable need through employment or property." *Myers*, 47 S.W.3d at 409; *see* § 452.335.1. "Where evidence exists to support a finding that the spouse requesting maintenance can meet his or her needs in this fashion, the denial of a request for maintenance will be upheld." *Myers*, 47 S.W.3d at 409. "However, if evidence suggests that the party requesting maintenance is unable to meet his or [her] needs and that maintenance is appropriate, then

this Court must consider the factors enumerated in section 452.335.2 ... and balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay." *Id.*

■ According to Wife's testimony, her reasonable needs totaled $2082.00 per month. She further testified that she generally took home $400.00 per month income as a hairdresser, which resulted in a monthly shortage of $1682.00. Thus, Wife requested monthly maintenance of $1600.00. Wife also testified she was living with her mother and as such, many of the expenses included in her calculations were estimates of her future needs. She further testified that she was waiting until after the divorce was final to move into her own place because she was uncertain what she would receive in the divorce and, consequently, what she could afford by way of housing options. A major portion of Husband's argument as to maintenance alleges that the trial court improperly considered these estimated expenses. However, it is not an abuse of discretion for the trial court to consider Wife's anticipated expenses for insurance, rent, and utilities in determining her reasonable needs. *See Goodwin v. Goodwin*, 746 S.W.2d 124, 127 (Mo.App.1988). "The trial court has broad discretion in evaluating the merits of each party's expense claims." *Evans v. Evans*, 45 S.W.3d 523, 529–30 (Mo.App.2001).

While the trial court did not make *specific* findings as to Wife's reasonable needs, the trial court did find "that the bank accounts awarded to petitioner will assist in providing for her needs;" that Wife "is able to earn between $1,200 and $1,800 per month as a hairdresser;" and that Wife's "reasonable needs can be met by the apportioned marital property, petitioner's employment as a hairdresser, and $200 per month maintenance."

Wife contends the IRA accounts should not be considered as "bank accounts" to assist in providing for her needs because "the IRA's would have substantial penalties and tax consequences if she were to cash those [out]."[4] Viewing the evidence in a light most favorable to the judgment as we must, *Nelson v. Nelson*, 937 S.W.2d 753, 754 (Mo.App.1997), we discern the trial court did "consider the reasonable expectation of investment income" derived from Wife's IRAs, when it determined the amount of maintenance Wife was to be accorded. *In re Marriage of Johnson*, 856 S.W.2d 921, 927 (Mo.App. 1993).[5] We recognize that Wife is not required to consume the marital assets apportioned to her in the dissolution to support herself. *In re Marriage of Bowman*, 972 S.W.2d 635, 640 (Mo.App.1998). However, "[a] trial court, in deciding the sufficiency of a spouse's property to provide for reasonable needs, must consider 'marital property apportioned' to a spouse." *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001); *see also Leslie v. Leslie*, 827 S.W.2d 180, 183 (Mo. banc 1992); §§ 452.335.1(1); 452.335.2(1), (5). "This reflects the general principle that investment income must be considered, so that maintenance is not awarded for the purposes of building an estate or accumulation of capital." *Hill*, 53 S.W.3d at 116; *In re Marriage of Tappan* 856 S.W.2d 362, 366 (Mo.App.1993). In making its determina-

tion relating to maintenance the trial court is not prohibited from consideration of retirement accounts (subject to penalties and taxes) in calculating maintenance. *Hill*, 53 S.W.3d at 116.[6]

Here, Wife was awarded half of the marital properties, consisting, in part, of monetary assets totaling $272,777.77 (including two IRA accounts valued at approximately $116,197.00). She was also awarded "shares of Met Life" as non-marital property, not valued by the trial court. Aside from the IRA accounts awarded each party, Wife received the vast bulk of the parties' remaining *monetary* assets: $156,581.00 v. $31,132.00 awarded Husband.[7]

Furthermore, while Wife may complain there was no evidence relating to applicable penalties or tax consequences of accessing the funds in the IRAs, she produced no evidence bearing on these matters. "[T]he burden of showing adverse tax consequences must be established with particularity at trial if they are to be considered on appeal." *Mika v. Mika*, 728 S.W.2d 280, 285 (Mo.App.1987); *see also* parallel discussions in *Cohen v. Cohen*, 73 S.W.3d 39, 55 (Mo.App.2002); *Keller v. Keller*, 877 S.W.2d 192, 196 (Mo.App.1994). ("The trial court may take into consideration the tax consequences when dividing the marital assets.... Having failed to

4. Husband's IRA CD # 200065830 with the Bank of Gravette was valued at approximately $220,860.00 of which the trial court awarded Wife one half. Additionally Wife was awarded a Corner Stone Bank IRA with an approximate value of $5767.00.

5. We observe, without so holding, that while "rates of return are not stable, recent decisions have held 5 percent to be a modest return on investments." *Breihan v. Breihan*, 73 S.W.3d 771, 778 (Mo.App.2002).

6. The trial court determines the amount of income—if any—imputed from these [retire-

ment and IRA] accounts based on the facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/ consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties.

*Hill*, 53 S.W.3d at 116–17.

7. Husband, of course, was awarded the parties' home valued at $107,000.00.

offer the court the opportunity to consider the tax consequences, wife cannot now complain.")

■ Nevertheless, the record shows that at the time of trial, Wife was 55 years of age, thus, not far from the time she may be allowed to access a traditional IRA without penalty. *See* discussion in *Nelson*, 937 S.W.2d at 756. Additionally, while Wife received half the marital property, she, like Husband, was not assigned any marital debts because the parties were essentially debt free. Considering the total economic circumstances of the parties, we are unable to conclude the trial court erred in considering a reasonable expectation of investment income to be derived from the IRA's awarded Wife in its determination of maintenance. *See Hill*, 53 S.W.3d at 116; *see also Breihan*, 73 S.W.3d at 777–78.

We next turn to the matter of whether Wife is able to help support herself through appropriate employment, in combination with the more than a quarter of a million dollars in assets she received and the maintenance award made by the trial court.

Although Wife testified she generally took home $400.00 per month as earnings from her shop, the trial court included in its findings of fact that Wife was underemployed and was capable of earning between $1200.00 and $1800.00 a month. Additionally, the court concluded Wife's income on her previous tax returns was understated and not all cash receipts were reported. Wife contends the record does not support such a finding. We agree, in part.

■ When calculating maintenance, the decision to impute income "depends on

the facts, determined on a case-by-case basis." *Hill*, 53 S.W.3d at 117. "A court may, in proper circumstances, impute income to a spouse according to what could be earned by 'best efforts.'" *Id.* (quoting *Leslie*, 827 S.W.2d at 183).

The record reveals that Wife worked as a cosmetologist or hairdresser at least fifteen years. She operated her own business. Husband testified that Wife grossed approximately $17,000.00 from her business on a yearly basis and valued her shop at $30,000.00. On cross-examination Wife never clearly explained how the bulk of her gross earnings went into overhead such that she had but $400.00 of disposable income each month.

Furthermore, Wife acknowledged that Husband "didn't give [her] any money," and that whatever money she got "had to come from the business." When asked what she did with the money that she made from her business, Wife answered, "I paid my shop bills, my salesmen. I bought groceries with it. I paid for my car, the expense on the car ... my kids' birthdays, and things of that sort."

■ It is difficult to perceive how Wife was able to support herself, pay for groceries, car expenses, gifts for her children and "things of that sort" on an income of $400.00 a month. As noted previously, determining credibility and "assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.'" *Love*, 72 S.W.3d at 171 (quoting *Haugh*, 978 S.W.2d at 82). Further, the "court was not required to accept wife's testimony about the amount of income she could earn or wife's assessment of her needs." *Schroeder v. Schroeder*, 924 S.W.2d 22, 27 (Mo.App.1996).[8]

8. Wife also complained of shoulder and feet problems. She presented no medical testimony in support of her physical maladies. While a trial court may consider the effects of

While we cannot agree there was sufficient evidence presented in the record showing that Wife's previous tax returns were understated and not all cash receipts were reported, we do agree that Wife's earning potential was understated. We infer from the evidence that Wife had at her disposal more than $400.00 per month generated through her earnings. Given her work experience over a number of years and background as a graduated cosmetologist, the trial court could have imputed at least minimum wage to Wife. *See Evans*, 45 S.W.3d at 530; *Hill*, 53 S.W.3d at 117; *Liljedahl*, 942 S.W.2d at 924. ("A court may, in proper circumstances, impute income to a spouse according to what he or she could have earned by the use of such person's efforts to gain employment suitable to his or her capabilities.") "'In determining wife's ability to support herself, the court is not confined to a consideration of present earnings but can consider prior earning capacity and probable future prospects.'" *Howsmon v. Howsmon*, 77 S.W.3d 752, 755 (Mo.App.2002) (quoting *L.E.B. v. J.L.B.*, 768 S.W.2d 638, 640 (Mo.App.1989)). The record supports the trial court's implied assessment that Wife can continue working as a hairdresser earning in excess of $400.00.

We also observe that the "court was not required to award maintenance which would meet all [Wife's] needs." *Schroeder*, 924 S.W.2d at 27. A maintenance award must be just, but the court is not required to award maintenance adequate to meet all of the needs of the spouse seeking the award even if the other spouse has sufficient resources to provide such support. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App.1991); *see also Hernan-*

*dez v. Hernandez*, 872 S.W.2d 161, 165 (Mo.App.1994).

Here, Wife has been allocated no debts; has no children to support; and was awarded marital properties in excess of $286,000.00—the bulk consisting of monetary assets capable of yielding a reasonable investment return. Furthermore, she is capable of earning *more* than $400.00 a month—at least minimum wage. *Hill*, 53 S.W.3d at 117. We cannot say the trial court abused its discretion in awarding Wife $200.00 per month maintenance payable by Husband. *Bixler*, 810 S.W.2d at 100. Wife's sole point is denied.

Lastly, in considering Husband's remaining point challenging the award of any maintenance, we recount the parties were married for over thirty-seven years. Early in the marriage Wife remained home and devoted the bulk of her time helping to raise the parties' three children. Wife also worked part-time for three or four years and then on a full-time basis helping to pay for her own needs and for the family's groceries and other domestic expenses and gifts.

Wife's projected monthly expenses were, essentially, recognized as valid by the trial court's findings of facts. Save for the cost of health insurance provided by Respondent's employer, Wife's projected monthly expenses were equal to or less than Respondent's actual monthly expenses. In our review we determine these expenses are reasonable and the trial court's determination was not contrary to the weight of the evidence presented. Furthermore, like Wife, Husband was

---

the physical or mental condition of the spouse seeking maintenance on his or her capacity to work and earn, such an award "cannot be based on mere speculation as to the current or future condition of such spouse." *In re*

*Marriage of Liljedahl*, 942 S.W.2d 919, 924–25 (Mo.App.1996). Indeed, she testified that the only reason she closed her business at the time of her separation was that she "didn't want to be harassed."

awarded approximately half of the marital assets. The parties have no significant marital debts, no doubt a testimonial to the joint enterprise and frugality of this couple. Furthermore, evidence of Husband's earnings show that he earned $61,246.00 in the year 2000, $50,511.85 in the year 2001, and was involved in a small cattle operation. A significant disparity between the parties' ability to work and to earn a living is also a sound reason for a maintenance award. *See Witt v. Witt*, 930 S.W.2d 500, 504 (Mo.App.1996); *see also Kirkwood v. Kirkwood*, 77 S.W.3d 675, 682 (Mo.App. 2002); *Colquitt v. Muhammad*, 86 S.W.3d 144, 151 (Mo.App.2002).

Our review of the evidence leaves us with a firm conviction that Wife is entitled to receive maintenance and clearly supports a maintenance award to Wife in the amount of $200.00 per month. *Kirkwood*, 77 S.W.3d at 683. Husband's point is denied.

The judgment of the trial court is affirmed.

PREWITT and GARRISON, JJ., concur.