Gloria CALHOUN, Appellant–Petitioner,

v.

John CALHOUN, Respondent–Respondent.

No. 26167.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 31, 2005.

Charles P. Todt, Tonya D. Fifer, The Todt Law Firm, P.C., St. Louis, Daniel R. Schramm, Daniel R. Schramm, L.L.C., Chesterfield, for appellant.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, LLC, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Gloria Calhoun ("Wife") appeals from a judgment dissolving her marriage to John Calhoun ("Husband"). Wife claims that the trial court committed reversible error when it (a) only awarded maintenance of $4,000 per month to her, (b) imputed income of $1,260 per month to her, and (c) allegedly failed to consider the future tax burden stemming from the award of an individual retirement account to her. This court affirms.

## STANDARD OF REVIEW

The provisions of a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court erroneously declares or applies the law. *Hammer v. Hammer*, 139 S.W.3d 239, 240[1] (Mo.App.2004). In making its maintenance determination, the

trial court enjoys broad discretion, and its decision will not be overturned unless the appellant demonstrates an abuse of discretion. *In re Marriage of Lindeman,* 140 S.W.3d 266, 272 (Mo.App.2004). "Evidence is viewed in a light most favorable to the judgment, disregarding contrary evidence and deferring to the trial court's determination even if the evidence could support another conclusion." *Id.*

## FACTS

The marriage between Husband and Wife lasted approximately twenty-three years. During this time, the couple produced two children, Tiffany (born August 21, 1981) and Justin (born April 25, 1984).

Husband obtained a master's degree in education, but left that field in 1982 to pursue a career as a stockbroker. This decision produced great financial results, as illustrated by Husband's gross income for 2002 ($535,795). In its Form 14 calculations, the trial court used that amount to set Husband's gross monthly income at $44,650.

Wife graduated from high school, but had no additional formal education. Her work experience included five years as a grocery store checker. Additionally, her work experience included real estate management. This real estate knowledge was gained during the time she worked for "the family business." The family business revolved around numerous rental properties.

In relation to at least some of these properties, Wife testified that she "did everything that really needed to be done," including cleaning the properties, renting the properties, and filing suit to collect unpaid rent monies. In relation to other properties (namely, two buildings containing sixteen apartment units), Wife oversaw the entire process, including review of the construction plans, decorating the units, and writing contracts. In fact, Wife became so savvy in real estate dealings that she "negotiated the sale price" of a home owned by the family which resulted in a profit of $1,000,000. From these acquired skills, Husband opined that Wife possessed employable skills for use in buying and selling real estate.

At the time of trial, Husband was fifty-one years old, and Wife was forty-eight. The evidence revealed that neither suffered from significant health problems that would preclude them from full-time employment.

In the judgment of dissolution, the trial court awarded Wife marital assets valued at $2,226,861. The court assigned to her responsibility for $189,068 in marital debt. Thus, the net equity in marital assets awarded Wife was $2,037,794, which represented 49.8% of the parties' net marital property. The marital property award to Wife included certain income-producing assets which the court found would generate over $8000 per month in income for Wife.[1] The court also imputed income of $1260 per month that Wife could earn if she obtained full-time employment. Wife will also receive almost $1000 per month in child support for the two children, and over $650 per month in support for Justin after Tiffany becomes legally emancipated.[2] In order to meet her reasonable

1. This finding is not challenged on appeal.

2. The court granted the parties joint legal and physical custody of the "children," allotting to each parent equal parenting time. At the time of trial, the "children" were both in college and Husband paid all expenses related thereto, including tuition and room and board. In the child support award, the court included "a sum for [Wife] as a custodian of the children." Husband has not challenged the child support award on appeal.

needs, the court awarded to Wife $4000 per month as maintenance.

The court awarded to Husband marital assets totalling $10,093,589. The court assigned to him marital debt in the amount of $8,039,682; thus, Husband received net marital property in the amount of $2,053,907 which represented 50.2% of the net marital estate. As indicated above, Husband was ordered to pay maintenance and child support to Wife. Husband was also ordered to pay 100% of the children's college expenses, including "tuition, fees, books, and dormitory costs for room and board."

After entry of the dissolution judgment, Wife filed the instant appeal. In this appeal, Wife raises three points of alleged error. In general, these points relate to the amount of income the court believed Wife is capable of receiving each month. Because Wife's second point would affect our resolution of Point I, we address it at the outset.

### Point II: Income Imputed to Wife

■ Wife's second point alleges the trial court committed reversible error when it imputed monthly income to her in the amount of $1260. In the argument section of her brief, Wife argues "that it was speculative for the trial court to have imputed *any employment income to her at all* under the facts and circumstances presented here." (Emphasis supplied.) Implicitly, it appears that Wife argues that she should not be required to work for the rest of her life.

■■ A divorcing spouse has an affirmative duty to seek full-time employment. *Breihan v. Breihan,* 73 S.W.3d 771, 775[4] (Mo.App.2002). A court is allowed to impute income to a spouse seeking maintenance according to what that spouse could earn by use of his or her best efforts to gain employment suitable to his or her capabilities. *Thomas v. Thomas,* 76 S.W.3d 295, 303[19] (Mo.App.2002). In making this determination, a court should consider prior earning capacity, present wages, and probable future prospects. *Linton v. Linton,* 117 S.W.3d 198, 208[29] (Mo.App.2003).

The uncontradicted evidence showed that Wife was healthy and entirely capable of full-time employment. Although she was a housewife for the majority of the marriage, she had a high school diploma and previous work experience as a grocery store cashier. More importantly, she gained valuable work experience through the "family business." In fact, her real estate business acumen resulted in a profit of $1,000,000 through only one sale. Based on these facts, the court imputed income in the amount of $1260 per month or $7.27 per hour.[3]

Husband testified to what he believed Wife could earn using her real estate knowledge. The undisputed evidence showed that Husband had an abundance of experience with property dealings. Without objection, Husband testified that Wife had the necessary real estate skills to buy and sell property for profit. The couple had done so throughout their marriage. Also, without objection, Husband testified that Wife could earn a living by becoming a real estate agent. After becoming licensed, Husband claimed that Wife could earn between $50,000 to $75,000 yearly ($4167 to $6250 monthly). The trial court was free to believe Husband's testimony. *Llana v. Llana,* 121 S.W.3d 286, 290–91[8] (Mo.App.2003).

We find no abuse of discretion when the trial court imputed monthly income to

---

**3.** The hourly wage is computed as follows: $1260 × 12 months = $15,120 per year divided by 52 weeks = $290.77 per week divided by 40 hours = $7.27 per hour.

Wife in the amount of $1260. The evidence supported a greater amount, but this has not been challenged on appeal; consequently, Wife cannot show prejudice.

### Point I: Maintenance Award

■ In her first point, Wife alleges the trial court committed reversible error when it awarded "maintenance of only $4000 per month." She repeatedly asserts (both in her brief and at oral argument) that this amount of maintenance unfairly relegates her "to the status of a second class citizen."[4] She argues that the high standard of living during the marriage, Husband's significant income, and the length of the marriage are factors which support a higher maintenance award.

As stated previously, a maintenance award falls within the sole discretion of the trial court. *Lindeman*, 140 S.W.3d at 272. "Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration." *Bonenberger v. Bonenberger*, 108 S.W.3d 729, 733[10] (Mo.App. 2003).

■ The trial court can award maintenance only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and (2) is unable to support himself or herself through appropriate employment. § 452.335.1, RSMo (2000); *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 103 (Mo.App.2003). "In applying this standard, the trial court must first determine the reasonable needs of the party seeking maintenance." *Id.* at 103[19]. Then, the court must determine whether

these needs could be met via the use of property or appropriate employment. *Id.*

It has been recognized "that in a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as a guide in computing the spouse's reasonable needs." *Hall v. Hall*, 553 S.W.2d 864, 868 (Mo.App.1977). "However, an excessive standard of living does not equate to reasonable needs under the statute." *Baldwin v. Baldwin*, 905 S.W.2d 521, 525[15] (Mo.App.1995). Thus, a court should not apply a mechanical approach whereby the standard of living of the parties is determined and then divided by two. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857[2] (Mo.App.1977). This follows because maintenance is founded on *need* and issues for support and only for support. *Booher v. Booher*, 125 S.W.3d 354[3], 357 (Mo.App.2004).

■ Further, a court is not required to award maintenance to meet all of a spouse's needs even if the other spouse has sufficient resources to provide such support. *Linton*, 117 S.W.3d at 208[30]. Maintenance serves the purpose of allowing the receiving spouse to readjust financially during a period of dependency. *Booher*, 125 S.W.3d at 357[4]. The emphasis of the maintenance statute is to allow a party support until he or she can become self-sufficient. *Brueggemann*, 551 S.W.2d at 856–57.

■ Here, Wife filed an income and expense statement as to "what [she] think[s] she should be *entitled* to." (Emphasis supplied.) Initially, we note that reasonable need for maintenance purposes is not based on entitlement; it is based on need. Maintenance should be awarded to meet the demonstrable needs of a spouse and should not be awarded for the purpose

---

4. Except for her complaint that the maintenance award failed to cover all of her listed expenses, Wife never explains what, in her view, defines a "second class citizen."

of accumulating capital or building an estate. *Linton,* 117 S.W.3d at 206[22]; *In re Marriage of Tappan,* 856 S.W.2d 362, 366[1] (Mo.App.1993).

In her income and expense statement, Wife alleged that her monthly expenses and needs totalled $21,887. The court determined that Wife's reasonable needs totalled $13,260 per month.[5] Essentially, the court arrived at this figure by disallowing Wife certain claimed expenses.[6] We find no abuse of discretion for a number of reasons.

First, many of Wife's claimed expenses had no evidentiary support. Certain items (3, 4, 7, and 11) listed in note six were left wholly unsupported by any evidence. Wife must prove her needs within a reasonable tolerance of proof. *Lindeman,* 140 S.W.3d at 273[6]. Second, certain expenses (9 and 12) were related solely to the children. The needs of children are taken care of by child support and should not be included in the maintenance calculation. *Adams v. Adams,* 108 S.W.3d 821, 827–28 (Mo.App.2003). Third, it appears that the court simply disbelieved some of Wife's claimed expenses (6, 8, and 10). The trial court was not required to accept these claims as true, even if they were uncontradicted. *Stidham v. Stidham,* 136 S.W.3d 74, 82 (Mo.App.2004).

Finally, we note Wife's chief complaint relates to expenses disallowed for items related to the marital home, which Husband was awarded in the property distribution. We find no abuse of discretion in this determination for the following reasons: (1) Wife testified that she would sell the home if the court awarded it to her because it was simply "a lot of house for one person;" (2) Wife was awarded a three bedroom and three bathroom home in California with a value of nearly $400,000; (3) Husband was ordered to pay her child support even though he primarily supports the children; (4) many of Wife's expenses related to the children were allowed in the maintenance calculation; and (5) the marital home was awarded to Husband primarily because he testified that he used it for his business. The disallowance of these expenses certainly does not shock our sense of justice.

■ The court's determination of reasonable needs at over $13,000 per month was not an abuse of discretion. The court awarded Wife income-producing property and maintenance that was sufficient to meet these needs. A maintenance award is premised upon the idea that a need exists to close the gap between a spouse's income and that spouse's monthly expenses. *Williams v. Williams,* 753 S.W.2d 101, 102 (Mo.App.1988). Here, that gap has been closed; consequently, we find no error.

### Point III: Alleged Failure to Consider Tax Consequences

■ In her final point, Wife alleges the trial court committed reversible error by

---

**5.** The court found that Wife could earn $9260 per month as income ($8000 from investment income and $1260 from full-time employment). The court awarded her $4000 in maintenance. In doing so, the trial court's judgment implicitly found that Wife's reasonable needs amounted to no more than $13,260 per month. *See Hammer,* 139 S.W.3d at 241–42.

**6.** The court decreased Wife's expenses as follows: (1) mortgage from $4750 to $846; (2) utilities from $965 to $217; (3) car payment from $770 to $708; (4) car maintenance from $200 to $0; (5) homeowner fees from $577 to $350; (6) charitable contributions from $200 to $0; (7) medical expense from $500 to $0; (8) metabolic research from $350 to $0; (9) food for the children from $750 to $0; (10) gifts from $833 to $0; (11) cars for children from $800 to $400; (12) dog care for Tiffany's pet from $100 to $0; and (13) cleaning costs for marital home from $400 to $0.

"failing to consider" the tax consequences of individual retirement accounts ("IRA") awarded to her. She argues the court misapplied the law by "failing to address" these known tax burdens. To support her argument, Wife points to evidence that revealed she "will be taxed at ordinary income tax rates" on periodic payments from IRAs.

In valuing an IRA for maintenance and property distribution purposes, the trial court enjoys broad discretion. *Hill v. Hill,* 53 S.W.3d 114, 116–17 (Mo. banc 2001). The court is required to "consider" income attributable to IRAs when calculating maintenance. *Lee v. Lee,* 117 S.W.3d 693, 697[7] (Mo.App.2003).

It is equally true that a court must consider the tax consequences as a factor when dividing a marital asset. *Brown v. Brown,* 14 S.W.3d 704, 707 (Mo. App.2000). The burden of showing adverse tax consequences must be established with particularity at trial. *Linton,* 117 S.W.3d at 206[24]. If a party fails to meet this burden, then he or she is precluded from raising the issue as an error on appeal. *Id.; Keller v. Keller,* 877 S.W.2d 192, 196 (Mo.App.1994); *Schneider v. Schneider,* 824 S.W.2d 942, 949[25] (Mo. App.1992).

Wife's argument fails for a number of reasons. First, Wife has only challenged the court's failure to "consider" or "address" the tax consequences in relation to the IRAs. Wife ignores the plain language of the trial court's judgment. Therein, the court explicitly states that it "has considered the tax consequences with regard to said income and maintenance, in concluding that [Wife] will be able to meet her reasonable needs with the net monthly sum received after taxes." Wife has not argued that the *failure to award* her a credit for the tax consequences results in an inequitable or unjust property distribution or insufficient maintenance award. She has merely claimed that the court did not consider such consequences. Facially, the judgment shows otherwise. Because the trial court is deemed to know the tax law, *Brown,* 14 S.W.3d at 707, we must presume it properly considered the tax consequences as not significantly affecting Wife's property or maintenance award.

Second, in her brief, the only evidence of tax consequences to which Wife points in support of her argument is as follows: "[Husband's] own financial expert freely admitted that [Wife] will have to pay ordinary income taxes on this money." In discussing her opinion on what could be earned from the IRAs, the expert testified as follows:

"IRAs are for retirement, and when you take those out, you take those out in periodic annual payments. And what that means is it would be enough paid out each year to liquidate the asset by the end of your life expectancy.

"[Question from Husband's attorney]: Can she do that immediately?

"[Answer]: Yes, she can.

"[Q]: It doesn't matter how old she is?

"[A]: No.

"[Q]: And are there any tax penalties to doing that?

"[A]: As long as you take out annual periodic payments for at least five years, you—There is no excise tax.

"[Q]: And—

"[A]: However, it is ordinary income taxable."

There was no testimony relating to the applicable tax rate, whether the amount would change from year to year, how the court should evaluate the tax consequences, whether the court should award a credit for the tax consequences in the future and reduce that to present value, or a

**418**

host of other considerations. Simply stated, Wife presented no evidence and no claim to the court that it should award her a credit for the tax consequences stemming from the IRAs. Consequently, she will not be heard to complain on appeal. *Linton,* 117 S.W.3d at 206; *Keller,* 877 S.W.2d at 196; *Schneider,* 824 S.W.2d at 949[25].

Finally, we do not believe Wife can show prejudice. This follows from the fact that the trial court did not award Husband many credits for alleged tax consequences flowing from his share of the marital assets. If the court had awarded each side certain credits for taxes, then it is likely that the overall property distribution would not have changed.[7]

We find no abuse of discretion in the failure to award Wife a credit for tax consequences flowing from the IRAs. The trial court properly considered such in its maintenance and property awards. Point denied.

The judgment of the trial court is affirmed.

BARNEY, J., and BATES, C.J., concur.

---

7. Moreover, Wife cites only one case to support her proposition, i.e., *Baldwin,* 905 S.W.2d 521. In that case, the husband's accountant testified that the tax liability was $360,852, and the trial court was free to accept that as true. *Id.* at 524. In our case, there was no evidence regarding *any* amount of liability. Therefore, *Baldwin* is factually inapposite.