William Dixson STIREWALT, Appellant,

v.

Cheryl Ann STIREWALT, Respondent.

No. SD 29974.

Missouri Court of Appeals, Southern District, Division One.

April 13, 2010.

John O. Russo, Mountain Home, AR, for Appellant.

Respondent did not file a brief.

ROBERT S. BARNEY, Judge.

Appellant William Dixson Stirewalt ("Husband") appeals the trial court's "Third Amended Judgment, Order and Decree of Dissolution of Marriage Nunc Pro Tunc" ("the Judgment"), which dissolved his marriage to Respondent Cheryl Ann Stirewalt ("Wife").[1] In two points of trial court error, Husband challenges the trial court's award of an equalization payment by him to Wife and the trial court's grant of "monthly, modifiable, and unlimited ..." maintenance to Wife in the amount of $1,050.00 a month.

The record reveals the parties were married on September 28, 1991, and were separated in February of 2008. There were no children born of the marriage.

Throughout the marriage, Husband was the owner of Dickey's Culverts, a distributorship for a culvert manufacturer, which he has owned for over twenty years. To supplement his income, in 2005 Husband began working as a part-time boilermaker for an out-of-town company and he averaged nine to eleven weeks of such work per year. At the time of the parties' marriage in 1991, Wife was employed with Burlington Northern Railroad and in 1992 she was injured in a work related accident. Thereafter, due to the injuries suffered in the accident, she received a personal injury settlement of approximately $380,000.00.[2] In 1998, Wife began drawing social security disability income and she now draws approximately $789.00 in disability payments per month.

On May 9, 2008, Husband filed his "Petition for Dissolution of Marriage," and Wife filed her answer on June 16, 2008. A trial was held on December 10, 2008. On September 18, 2009, the trial court entered the Judgment in this matter.[3] At the conclusion of all the evidence, the trial court, *inter alia,* ruled that the parties' marriage was dissolved; divided the parties' nonmarital and marital property as well as debts; adjudged that Wife should receive a $7,103.56 "equalization" payment to make up for the difference in the assets and debts awarded to each party; and that Husband was to pay to Wife $1,050.00 per

---

1. We note Wife did not file a brief in this appeal.

2. The parties testified that Wife's settlement money was spent in the following ways: they spent $200,000.00 to build a house, improve the property on which the house was located, and to buy equipment; and they spent $14,000.00 in relation to Wife's doctor's appointments. In 2005 they sold their home for $285,000.00 with the outstanding loan on the home at that time totaling $195,982.00. The remainder of the money was put into several CD's which were expended prior to the parties' separation.

3. We note there was a great deal of procedural history which occurred between the time of trial and the entry of the Judgment in this matter. There were several previous judgments entered *nunc pro tunc* to cure clerical mistakes as well as numerous motions filed by both parties. These procedural dealings are not necessary to recite in our review and need be mentioned only to explain the long period of time which elapsed between the trial and the Judgment being entered.

month as "modifiable" maintenance for an "unlimited" amount of time. This appeal by Husband followed.

 Our standard of review in dissolution of marriage cases is the same as that used for any court-tried case: we must affirm the trial court's decree unless it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or misapplies the law. *Vanderpool v. Vanderpool,* 250 S.W.3d 791, 794 (Mo.App.2008); *see also* Rule 84.13(d).[4] When reviewing a dissolution decree, we view the evidence in the light most favorable to the decision, *In re Marriage of Taylor,* 244 S.W.3d 804, 808 (Mo.App.2008), and the party challenging the decree "has the burden of demonstrating error." *Id.* " 'A trial court is free to believe or disbelieve all, part or none of the testimony of any witness.' " *In re Marriage of Pahlow,* 39 S.W.3d 87, 90 (Mo.App.2001) (quoting *In re Marriage of Thompson,* 24 S.W.3d 751, 755 (Mo.App. 2000)).

 In his first point relied on, Husband asserts the trial court erred in entering a judgment against him

in the amount of $7,103.56 for equalization of the parties' equity in their marital property because the assessment of [Husband's] total value of $14,341.86 and [Wife's] total value at a mere $134.74

amounted to an abuse of discretion in that the division was so unduly weighted in favor of [Husband] that it was unfair and inequitable given the weight of the evidence and Missouri law.[5]

 A trial court is given broad discretion in dividing property, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion. *Kirkwood v. Kirkwood,* 77 S.W.3d 675, 680 (Mo.App.2002). The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *In re Marriage of Holden,* 81 S.W.3d 217, 225 (Mo.App.2002). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *Rivers v. Rivers,* 21 S.W.3d 117, 123 (Mo. App.2000); *see also In re Marriage of Ward,* 955 S.W.2d 17, 21 (Mo.App.1997). Pursuant to section 452.330, in dissolving a marriage, the trial court awards each spouse his or her non-marital property, then divides the remaining marital property and debts in a reasonable manner after consideration of all relevant factors enumerated in section 452.330.[6] *See Rivers,* 21 S.W.3d at 122; *Kester v. Kester,* 108

---

4. All rule references are to Missouri Court Rules (2009).

5. We note Husband's brief suffers from several briefing deficiencies; however, the majority of these issues do not impair our review of Husband's allegations of error. The bulk of Husband's argument in his first point relied on is directed at the trial court's alleged misclassification and allocation of certain property, the trial court's miscalculation of certain debt amounts, and the trial court's alleged undervaluation of certain property such that it entered an "incorrect valuation of the marital property." These issues are not specifical-

ly raised in the point relied on. " 'Errors raised for the first time in the argument portion of the brief and that are not raised in the point relied on need not be considered by this Court,' " *Woods v. Friendly Ford, Inc.,* 248 S.W.3d 665, 676 n. 11 (Mo.App.2008) (quoting *Pearman v. Dep't of Social Srvs.,* 48 S.W.3d 54, 55 (Mo.App.2001)). As such we shall address Husband's point relied on as framed and we will not discuss the issues raised solely in the argument portion of his brief.

6. All statutory references are to RSMo 2000.

S.W.3d 213, 224 (Mo.App.2003). There is no set formula concerning the weight given to the factors considered under section 452.330. *Kester*, 108 S.W.3d at 224. It is clear that the "[d]ivision of the marital property need not be equal, 'but [the] division of the marital assets must be fair and equitable given the circumstances of the case.'" *Travis v. Travis*, 163 S.W.3d 43, 47 (Mo.App.2005) (quoting *Jarvis v. Jarvis*, 131 S.W.3d 894, 899 (Mo.App.2004)).

Here, after finding Husband had no non-marital property, the trial court awarded Husband $46,641.86 in marital property which included his truck; two trailers; a motorcycle; his equipment, money on hand, and interest in Dickey's Culverts; and miscellaneous smaller items. The following marital debts totaling $32,300.00 were also allocated to Husband: a debt to Century Bank of the Ozarks for $21,450.00 for his truck; a loan for Dickey's Culverts with Century Bank of the Ozarks for $2,250.00; and a debt owed to Thomas and Rosalie Williams for a motorcycle he purchased. The total value of property awarded to Husband after the subtraction for debts was $14,341.86.

Wife was awarded non-marital property in the amount of $13,700.00, which included the following: a 1929 T bucket valued at $2,000.00; a 1967 GMC Truck valued at $1,500.00; some antique jewelry valued at $10,000.00; an antique coin collection valued at $50.00; and some antique guns valued at $150.00. The trial court awarded Wife $9,756.74 in marital property, which included her personal vehicle, a trailer, a horse, money in several bank accounts as well as cash on hand, 2 John Deere tractors, some tools, numerous home furnishing items, a sewing machine, and other miscellaneous objects. The following debts in the amount of $9,622.00 were allocated to Wife: a debt to W.D. Grinkavitch, Wife's mother, in the amount of $5,150.00 for a loan given to Wife "to help [Wife] make it through the month and like buy hay and pay for attorney fees;" a debt to Maxine Linthicum in the amount of $1,000.00 which was borrowed by Wife in order to pay her attorney's retainer fee; a debt to her landlord, Karen Carpenter, for $2,675.00 in back rent; certain medical debts in the amount of $497.00; and a debt to WP Vet for $300.00. The total value of the property set aside to Wife was $134.74. The difference in the total value awarded to Husband and the total value awarded to Wife was $14,207.12. As a result, the trial court split that amount in half and ordered Husband to pay Wife an "EQUALIZATION PAYMENT" of $7,103.56.

As already stated, the division of marital property need not be equal, but it must be fair and equitable considering the circumstances of the case. *Rawlings v. Rawlings*, 36 S.W.3d 795, 797 (Mo.App.2001). In the present matter, the trial court ultimately awarded the parties the same amount of marital property and debts. They each received their personal vehicles as well as the personal property they requested and Husband received all of his interest, equipment, and other items relating to his business. While Husband had no non-marital property, Wife had a small amount of non-marital property composed mainly of family heirlooms which she asserted were not ever to be sold. The parties owned no real property to be divided and there were no children born of the marriage. It appears that the parties contributed equally to the marriage in that Husband worked throughout the marriage and Wife worked until her work related injury after which she stayed at home to care for the house. There is nothing in this record to suggest that the division of property and debts in the present matter was anything other than just and fair under the circumstances of this case and the five factors set out in section 452.330.1.

We assume the trial court's division of property is correct and we find Husband has failed to meet his burden in overcoming that presumption. *Rivers*, 21 S.W.3d at 123. The trial court did not err. Point I is denied.

■ In his second point relied on, Husband maintains the trial court erred in "ordering [him] to acquire additional work in order to support the award of $1,050.00 of monthly maintenance...." He argues there was insufficient evidence showing that he had additional work available as a boilermaker to support the imputation of income to Husband in the amount of $500.00 a month and he further contends Wife had sufficient property to meet her reasonable needs.

■ A trial court is afforded broad discretion in determining whether or not to award maintenance. *Elrod*, 144 S.W.3d at 380. The determination of whether to award maintenance under section 452.335.1 is a two-step procedure. *In re Marriage of Moyers*, 272 S.W.3d 500, 503 (Mo.App. 2008). "In the first step, section 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment." *Elrod*, 144 S.W.3d at 380. Once the trial court makes these findings, section 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute and "'balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay.'" *Linton v. Linton*, 117 S.W.3d 198, 205 (Mo.App.2003) (quoting *Myers v. Myers*, 47 S.W.3d 403, 409 (Mo.App.2001)).

Here, the record shows Wife was allocated non-marital properties, consisting of vehicles, jewelry, and personal items valued at $13,700.00, and $9,756.74 in marital property consisting of a vehicle, trailer, horse, tractors, tools, home furnishings and modest bank accounts. She was also awarded an equalization payment of $7,103.56 from Husband. The trial court also allocated debts to Wife in the amount of $9,622.00. It is readily apparent that Wife has but a modest amount of income-producing property.

■ Wife also presented evidence that her monthly expenses ranged between $1,732.00 and $1,857.00 and there is support in the record for the trial court's determination that Wife's reasonable monthly expenses amount to $1,732.00. The trial court determined that Wife also presented evidence of additional one-time expenses amounting to $14,700.00.[7] Wife also presented evidence that she suffered a work related injury in 1992 that prevented her from returning to work for the railroad or from finding gainful employment. She testified that her work related injury caused her to have two ruptured discs as well as a herniated disc. She stated she has had at least five surgeries on her back since the time of the injury and she has even had part of her spine fused. She also

---

7. She testified to one time expenses in the amount of $3,000.00 to get her vehicle repaired; $700.00 for dental work; $6,750.00 to repair her two tractors; $450.00 for vaccines for her seven dogs, four cats and one horse; $10,000.00 for a spinal cord stimulator to aid in her pain relief; $1,000.00 for a new wood stove; and $800.00 for a new washer and dryer. The trial court determined the farm expenses, the expenses for the care of her animals and the expense for the new washer and dryer were not necessary expenses. The trial court did not abuse its discretion in determining that her additional, one time expenses amounted to $14,700.00.

related she is in ongoing therapy for her back issues and she specifically was undergoing constant pain management care such as shots and medications. It is clear from the record that Wife met her threshold burden of proving she was "unable to support herself through appropriate employment." *Id.* Wife's only other source of income is her monthly income from her social security disability in the amount of $789.00. An award of maintenance "is 'aimed at closing the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses.'" *Tarneja v. Tarneja,* 164 S.W.3d 555, 564 (Mo.App.2005) (quoting *N.M.O. v. D.P.O.,* 115 S.W.3d 854, 857 (Mo.App.2003)). It is clear that, based on her income and expenses, Wife lacked sufficient property to provide for her reasonable needs. *See Elrod,* 144 S.W.3d at 381.

Turning to the second part of our analysis, we now examine the ten factors set out in 452.335.2 and we "'balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay.'" *Linton,* 117 S.W.3d at 205 (quoting *Myers,* 47 S.W.3d at 409). We initially note that the parties appeared to have a comfortable standard of living and neither party seems to be asserting an unreasonable amount for his or her necessary, periodic expenses. Further, the parties were married for seventeen years which is clearly a "considerable duration."

The record shows Husband earned $7,364.00 from his business in 2005, $21,846.00 in 2006 and $6,644.00 in 2007. Husband offered testimony that as a result of weak earnings from his business he worked as a boilermaker on a part-time, as-needed basis, commencing in 2005 and averaging $25.00 an hour. The record shows that Husband earned $5,570.00 for his boilermaker work in 2006, and $20,585.00 for his boilermaker work in

2007. Husband related he was 52 years of age and in reasonably good health and was able to be gainfully employed for the foreseeable future. The trial court then found that in 2007 Husband's monthly income averaged $2,412.75. Husband presented evidence that his monthly expenses approximated some $1,567.50, which the trial court implicitly found to be reasonable. The trial court then determined Husband "has additional work available as a boilermaker and could increase his income by taking this work," and that Husband "is capable of earning an additional $500.00 per month if he would avail himself of the additional boilermaker work" thus giving him "a surplus of $1,345.25."

In our analysis, we initially observe that reasonable needs "[do] not automatically equal the standard of living established during the marriage." *Nichols v. Nichols,* 14 S.W.3d 630, 636 (Mo.App. 2000); *see Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo.App.1977). Indeed, "a court is not required to award maintenance to meet all of a spouse's needs even if the other spouse has sufficient resources to provide such support." *Calhoun v. Calhoun,* 156 S.W.3d 410, 415 (Mo.App.2005); *see Linton,* 117 S.W.3d at 208. Unfortunately, in the instant matter, Wife is unable to work outside the home and there are insufficient monetary resources to provide the parties with a standard of living similar to that which they enjoyed while married or to provide for each party's reasonable needs. Wife does receive disability payments in the amount of $789.00 and apparently receives government supported medical assistance. As part of the division of marital property, Wife was granted a cash equalization award from Husband in the amount of $7,103.56, and it may be that Wife may choose to sell some of her personal properties such as her horse, trailer, two John

Deere tractors or other assets in order to raise money. *See In re Marriage of Torix,* 863 S.W.2d 935, 939 (Mo.App.1993).

▮ Additionally, "[i]n considering a party's capacity to pay maintenance, 'the court may impute income to a spouse according to what he . . . could earn by use of his . . . best efforts to gain employment suitable to his . . . capabilities.' " *Hall v. Hall,* 118 S.W.3d 252, 257 (Mo.App.2003) (quoting *Kunkel v. Kunkel,* 84 S.W.3d 557, 561 (Mo.App.2002)); *see Hill v. Hill,* 53 S.W.3d 114, 117 (Mo. banc 2001). The spouse's past and present earnings may be considered in making that determination. *Hall,* 118 S.W.3d at 257. With that being said, "[i]mputing income depends on the facts, determined case-by-case in the sound discretion of the trial court." *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 783 (Mo. banc 2003).

In relation to his boilermaker work, Husband related he attempted to get into a union, but the union required completion of 6,000 non-union hours of journeyman work spanning a period of seven years in order to obtain a "union book card." Once he obtained a union book card, only then would he be able to work in any capacity for the union. Therefore, he asserted he was basically offered only apprenticeship work at less money. Indeed, Husband testified he never worked full-time as a boilermaker and the record reveals that from about 2006 through 2007 he was offered only eleven weeks out of each year for employment as a boilermaker. Further, he testified that as of December 10, 2008, he had been offered nine weeks of employment as a boilermaker. Additionally, Husband testified that performing boilermaker activities was very physically demanding and the majority of boilermakers were young men between the ages of 20 to 25 years of age. He testified that he did not believe he would be able to maintain year-round employment as a boilermaker due to his age and his health since the average boilermaker's work load is seven days a week for ten to twelve hours a day, involving a lot of heavy lifting, climbing, and exposure to chemicals. Furthermore, during the time he worked as a boilermaker he was unable to perform his self-employment work at Dickey's Culverts, thereby reducing his income from Dickey's Culverts. Indeed, the record shows that Husband's work schedule varied from week-to-week and his culvert business did not produce a regular paycheck. On the other hand, Wife's evidence regarding Husband's boilermaker work was sketchy at best. She testified she overheard a conversation between Husband and his foreman on the phone, wherein Husband told the foreman that he "didn't want to work over six to eight weeks at a time."

It is this Court's view that the evidence does not indicate Husband is able to presently pay $1,050.00 a month in modifiable maintenance and meet his reasonable needs at the same time. *Bolch v. Bolch,* 78 S.W.3d 769, 773 (Mo.App.2002). This is because his business income from Dicky's Culverts has been declining in the past three years, and when he works as a boilermaker he cannot work at the same time at his culvert business. Additionally, it is not clear that he can obtain a greater number of hours of work as a boilermaker in the future because he is not in the boilermaker union and works as an apprentice. Even if the trial court did not view Husband's testimony as credible in whole or in part, little evidence was presented from which the trial court could have arrived at its amount of imputed income. *See Monnig v. Monnig,* 53 S.W.3d 241, 247 (Mo.App.2001). "While a trial court can rely on reasonable inferences in determining whether to impute income, it cannot rely on speculation." *Sherman v.*

*Sherman,* 160 S.W.3d 381, 397 (Mo.App. 2004). Additionally, Husband is now past 53 years of age and may or may not have the physical stamina to continue in this line of work.

Accordingly, we reverse the maintenance award but need not remand for additional evidence. The trial court found that to meet her reasonable needs, Wife needed to receive maintenance from Husband in the amount of $943.00 per month. In addition, the trial court found that Wife "has further current needs in the lump sum amount of $14,700.00." After improperly imputing $500.00 per month in additional income to Husband, the trial court found Husband's income exceeded his reasonable needs by $1,345.25 per month. Based on this purported excess and its view of Wife's reasonable needs, the trial court ordered Husband to pay Wife maintenance in the amount of $1,050.00 per month. In that the extra $500.00 per month of income imputed to Husband by the trial court was not supported by the evidence adduced at trial, we reduce Husband's income by that amount to reflect his actual income. *See Lee v. Gornbein,* 124 S.W.3d 52, 61 (Mo.App.2004). Therefore, when Husband's actual income is used, that amount exceeds his necessary expenses by $845.25 per month or $1,345.25 minus the $500.00 of imputed income. Rule 84.14 provides that an appellate court shall "give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." As such, we reverse the trial court's award of modifiable maintenance in the amount of $1,050.00 per month. Pursuant to Rule 84.14, this Court enters judgment for Wife and against Husband for modifiable maintenance of unlimited duration in the amount of $845.25 per month, the maximum amount of Wife's necessary support that Husband is reasonably able to pay, commencing August 1, 2008, due and payable on the first date of each month thereafter. In all other respects, the Judgment of the trial court is affirmed.

BATES, P.J., and BURRELL, J., concur.